**ESI MONTGOMERY COUNTY, INC., Plaintiff,**

v.

**MONTENAY INTERNATIONAL CORP., Montenay Montgomery Trust and Montenay Energy Resources of Montgomery County, Inc., Defendants.**

No. 94 Civ. 0119 (RLC).

United States District Court, S.D. New York.

June 14, 1995.

---

Dewey Ballantine, New York City (John M. Friedman, Jr., of counsel), for Plaintiff.

McDermott, Will & Emery, Washington, DC (Michael E. Friedlander, of counsel), for Defendants.

## *OPINION*

ROBERT L. CARTER, District Judge.

Plaintiff moves pursuant to Rule 15, F.R.Civ.P. and Rule 3 of the Local Rules for leave to file a second amended complaint to amend its cause of action based on § 12(2) of the Securities Act of 1933 ("the 1933 act"), 15 U.S.C. § 77*l* (1988), and to add causes of action based on § 10(b) of the Securities Exchange Act of 1934 ("the 1934 act"), 15 U.S.C. § 78j (1988); on Rule 10b–5, 17 C.F.R. § 240.10b–5 (1994); and on common law fraud. Defendants renew their motion for summary judgment and dismissal of the amended complaint pursuant to Rule 12(b)(6), F.R.Civ.P. and Rule 56, F.R.Civ.P. Defendants also move for a protective order staying discovery pending the disposition of these motions.

## I. Background

The background of this action has been set out in the court's endorsement of December 12, 1994, with which familiarity is assumed. On October 21, 1991, ESI Energy, Inc. ("ESI Energy"), through its subsidiary, plaintiff ESI Montgomery County, Inc. ("ESI"), purchased a limited partnership interest constituting 72% of Montenay Montgomery Limited Partnership ("MMLP"), which owns and operates a waste-to-energy facility in Pennsylvania. Defendant Montenay International Corp. ("MIC") retained a 28% interest in MMLP, through its related entities. Defendant Montenay Energy Resources of Montgomery County, Inc. ("MERMCI"), a wholly owned subsidiary of MIC, is the managing general partner of MMLP, and defendant Montenay Montgomery Trust ("MMT"), a common law trust created for the benefit of MIC and its affiliated companies, was a limited partner through October, 1991.

ESI became interested in purchasing a share in MMLP after receiving a letter, dated August 14, 1990, accompanied by an investment memorandum prepared by Salomon Brothers, Inc. on behalf of MIC. ESI also received a second investment memorandum, dated March, 1991, and prepared by Salomon Brothers on behalf of MIC. On April 16, 1991, ESI offered to purchase a limited partnership interest in MMLP, and after a series of negotiations ESI and MMT entered into a purchase agreement, in which MMT sold a portion of its limited partnership interest in MMLP to ESI.

On January 10, 1994, ESI filed a complaint against defendants, alleging that they had misrepresented material facts in the purchase agreement, thus violating § 12(2) of the 1933 act, which provides a cause of action for purchasers of securities who relied upon an untrue material statement contained in a prospectus. The complaint also alleged that defendants breached the purchase agreement and made negligent representations to ESI. Defendants subsequently moved for summary judgment on the § 12(2) claim, arguing that the claim lacked a basis because the purchase agreement, which was privately negotiated after market sale of a security interest, did not constitute a prospectus within the meaning of the 1933 act. Defendants also moved for dismissal of the state law causes of action on the ground that the court would lack subject matter jurisdiction once the federal securities claim had been dismissed. The court denied the motions, relying on Second Circuit precedent for the proposition that § 12(2) applied to private as well as public offerings of securities. *ESI Montgomery County, Inc.*, No. 94 Civ. 0119, slip op. at 4 (S.D.N.Y. Dec. 12, 1994) (Carter, J.).

On February 24, 1995, plaintiff filed an amended complaint, amplifying the allega-

tions it had made in the original complaint. On February 28, 1995, the Supreme Court overturned the Second Circuit precedent on which the court had relied in its December, 1994 opinion, ruling that the antifraud provisions of § 12(2) apply only to public offerings by issuers and by their controlling persons. *Gustafson v. Alloyd Co.*, —— U.S. ——, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995). Plaintiff concedes that in light of *Gustafson* it has no cause of action under § 12(2) based on the alleged misrepresentations contained in the purchase agreement, but it moves to amend its § 12(2) cause of action to include alleged misrepresentations contained in the investment memoranda. It also seeks leave to amend its complaint in order to add fraud claims based on the alleged misrepresentations contained in the purchase agreement.

## II. Motion to Amend § 12(2) Claim

Leave to amend a complaint pursuant to Rule 15(a), F.R.Civ.P., should be liberally granted in accordance with the liberal pleading policy of the federal rules. *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir.1981). Leave to amend should be denied, however, where amendment would be futile, where it is sought in bad faith, or where it would prejudice the opposing party. *Id.*

Defendants oppose plaintiff's motion to amend the cause of action based on § 12(2), arguing that amendment would be futile in light of the ruling in *Gustafson* that § 12(2) applies only to a "public offering of securities by an issuer or controlling shareholder." *Gustafson*, —— U.S. at —— – ——, 115 S.Ct. at 1073–74; *see also In re Valence Technology Secs. Litig.*, No. C94–1542–SC, 1995 WL 274343, at *19 n. 15 (N.D.Cal. May 8, 1995) ("The Court in *Gustafson* held that § 12(2) does not apply to private placement transactions."); *Endo v. Albertine*, No. 88 C 1815, 1995 WL 170030, at *6 n. 3 (N.D.Ill. Apr. 7, 1995) (decision in *Gustafson* "limits recovery under § 12(2) to only those class members who purchased securities in a public offering"). Plaintiff disputes that this was the clear holding of the case, pointing to the majority's agreement with a conclusion reached by both the SEC, as amicus, and by Justice Ginsburg, in her dissent, that "§ 12(2) applies to every class of security (except one issued or backed by a governmental entity), whether exempted from registration or not. . . ." *Gustafson*, —— U.S. at ——, 115 S.Ct. at 1072. Plaintiff construes this language as indicating that although the security at issue here was exempted from the registration requirements because it was a private offering, it may still be covered by § 12(2). (Pl.'s Reply Mem. in Supp. of Mot. for Leave to File 2d Am.Compl. at 16–17.)

■ Writing for the majority in *Gustafson*, Justice Kennedy was careful to note that although there was no disagreement between himself and the SEC regarding which securities were covered by § 12(2), "[t]he question before us is the coverage of § 12(2), and the writings offered by the SEC are of little value on this point." *Gustafson*, —— U.S. at ——, 115 S.Ct. at 1072. The first time that Justice Kennedy formulated the question facing the court he wrote, "The question presented is whether this right of rescission extends to a private, secondary transaction, on the theory that recitations in the purchase agreement are part of a 'prospectus.'" *Id.* at ——, 115 S.Ct. at 1064. In other words, the issue settled in *Gustafson* is not which *securities* are exempt from § 12(2), but rather which *transactions* are exempt from § 12(2). This distinction makes sense in light of the structure of the 1933 act, which distinguishes between exempted securities, which are identified in section 3 of the act, 15 U.S.C. § 77c (1988), and exempted transactions, which are identified in section 4 of the act, 15 U.S.C. § 77d (1988). Furthermore, in § 12(2) it was only by distinguishing between public and private transactions that Congress was able to impose liability without regard to fraud or reliance. Although the public should be allowed to rely upon statements "contained in a document prepared with care, following well established procedures relating to investigations with due diligence and in the context of a public offering by an issuer or its controlling shareholders," it would be overly draconian to impose such extensive liability with regard to "every casual communication between buyer and seller in the secondary market." *Gustafson*, —— U.S. at ——, 115 S.Ct. at 1071. Therefore,

*Gustafson,* clearly permits plaintiffs to state a cause of action under § 12(2) only if they purchased their limited partnership interest in MMLP through a public offering.

Whether an offering is public within the meaning of the 1933 act depends on "(1) the number of offerees; (2) the sophistication of the offerees, including their access to the type of information that would be contained in a registration statement; and (3) the manner of the offering." *United States v. Arutunoff,* 1 F.3d 1112, 1118 (10th Cir.), *cert. denied sub nom. DeVries v. United States,* —— U.S. ——, 114 S.Ct. 616, 126 L.Ed.2d 580 (1993). Had plaintiff alleged that the offering was public it would be premature for the court to assess the weight of these factors and determine the truth of plaintiff's assertion. However, plaintiff has not alleged that the offering was public—on the contrary, plaintiff acknowledges that the investment memoranda were "private offering memoranda," (Pl.'s Mem. in Supp. of Mot. for Leave to File 2d Am. Complaint at 8), and that "[t]he offer and sale of the limited partnership interest at issue in this case was exempted from registration by Section 4(2)" of the 1933 act, which exempts private offerings. (Pl.'s Reply Mem. in Supp. of Mot. for Leave to File 2d Am.Compl. at 17.) Confirming this interpretation, the investment memoranda both stated, "The leveraged lease or partnership financing being offered hereby has not been registered under the Securities Act of 1933, as amended . . . or under any state securities law in reliance upon exemptions from registration for transactions not involving a public offering." (Friedlander Aff., Ex. 8.) Therefore, plaintiff has no cause of action against defendants pursuant to § 12(2), the motion to amend must be denied on grounds of futility, and defendants' renewed motion for summary judgment on this claim is granted.[1]

Plaintiff attempts to avoid the implications of *Gustafson* by arguing that the holding of that case was merely that private purchase agreements could not be considered prospectuses for the purposes of § 12(2), and

that the Court "did not espouse an opinion on whether other documents selling or offering to sell securities would be considered prospectuses under the 1933 Act." (Pl.'s Mem. in Supp. of Mot. for Leave to File 2d Am. Compl. at 8.) This argument is based solely on plaintiff's observation that "[c]ourts have long recognized that private offering memoranda for the sale of limited partnership interests are prospectuses under the 1933 Act." (Pl.'s Mem. in Supp. of Mot. for Leave to File 2d Am.Compl. at 8.) As Justice Ginsburg noted in her dissent in *Gustafson,* however, all circuit court rulings finding that § 12(2) covered private offerings were overruled by the majority's holding in *Gustafson. Gustafson,* —— U.S. at ——, 115 S.Ct. at 1082 (Ginsburg and Breyer, JJ., dissenting). In light of the Supreme Court's clear ruling that § 12(2) covers only public offerings, private offering memoranda can no longer be considered prospectuses within the meaning of § 12(2).

### III. Motion to Amend Complaint to Add Fraud Claims

#### A. Statute of Limitations

Defendants argue that plaintiff's § 10(b) claim is barred by the statute of limitations and that consequently plaintiff's motion to amend the complaint to add a § 10(b) claim is futile. The Supreme Court held in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 362–64, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991), that the statute of limitations for a § 10(b) cause of action is the "1–and–3–year" structure that applies to the express causes of action in § 13 of the 1933 act, 15 U.S.C. § 77m (1988), and to certain express causes of action in the 1934 act. *See, e.g.,* 15 U.S.C. § 78i(e) (1988). Under that limitations scheme, causes of action may be brought one year from discovery of the fraud but in no event more than three years from the commission of the fraudulent act.

Defendants assert that the action falls outside of the three-year limitations period

---

1. Since the court has dismissed plaintiff's § 12(2) claim, it will not address defendants' assertions that the claim is barred by the "bespeaks cau-

tion" doctrine and that the alleged misrepresentations underlying the § 12(2) claim are not contained in the investment memoranda.

because it is based on alleged misrepresentations made during the period July to October, 1991. Plaintiff asserts, however, that by letter agreement, dated June 28, 1993, defendants agreed to waive their statute of limitations defenses in this action. (Pl.'s Mem. in Further Opp'n to Renewed Mot. for Summ. J. at 2.) Although in their motion papers defendants do not contest or admit their waiver, they have contested it previously. (*See* Unverified Answer to Compl.) It would be inappropriate to decide in the context of this motion to amend whether the statute of limitations defense has in fact been waived. However, given the plaintiff's assertion that defendants waived the defense, the court cannot find that the § 10(b) action is clearly barred by futility based on the statute of limitations.[2]

■ Defendants assert that even if they did agree to waive their statute of limitations defense to this action, that waiver was not effective because the three-year statute of limitations for a § 10(b) action cannot be tolled. (Defs.' Mem. in Opp'n to Mot. for Leave to File 2d Am.Compl. at 24.) The basis for this argument is the Supreme Court's holding in *Lampf* that equitable tolling principles do not apply to § 10(b) actions. That holding was based on the premises that equitable tolling occurs where the injured party is ignorant of the fraud, and that under the "1–and–3–year" scheme, "[t]he 1–year period, by its terms, begins after discovery of the facts constituting the violation, making tolling unnecessary. The 3–year limit is a period of repose inconsistent with tolling." *Lampf, Pleva, Lipkind, Prupis & Petigrow,* 501 U.S. at 363, 111 S.Ct. at 2782. Since the holding was based on the nature of equitable tolling, it does not apply to other types of tolling, including express waiver of the statute of limitations. *See Xerox Fin. Servs. Life Ins. Co. v. Salomon Bros., Inc.,* No. 92 C 1767, 1992 WL 151923, at *4–5 (N.D.Ill.1992) (applying tolling agreement to § 10(b) cause of action). Therefore, defendants could agree to waive their statute of limitations defense.

### B. Colorability of Claims

■ Defendants argue that plaintiff should be barred from amending its complaint to add causes of action pursuant to § 10(b) and New York common law because the claims are not colorable. Leave to amend may be denied where the amended complaint could not withstand a motion to dismiss, *Valdan Sportswear v. Montgomery Ward & Co.,* 591 F.Supp. 1188, 1190 (S.D.N.Y.1984) (Weinfeld, J.); *Halpert v. Wertheim & Co.,* 81 F.R.D. 734, 735 (S.D.N.Y.1979) (Sweet, J.), but "[a]mendment should be refused only if it appears to a certainty that plaintiff cannot state a claim." *Polycast Technology Corp. v. Uniroyal, Inc.,* 728 F.Supp. 926, 942 (S.D.N.Y.1989) (Walker, J.) (quoting *Square D. Co. v. Niagara Frontier Tariff Bureau, Inc.,* 760 F.2d 1347, 1366 (2d Cir.1985), *aff'd,* 476 U.S. 409, 106 S.Ct. 1922, 90 L.Ed.2d 413 (1986)). Under Rule 9(b), F.R.Civ.P., "the circumstances constituting fraud ... shall be stated with particularity," although the "condition of mind of a person may be averred generally." A complaint has pleaded fraud with sufficient particularity where it "adequately specified the statements it claimed were false or deceptively incomplete; it gave particulars as to the respect in which plaintiff contended the statements were fraudulent; it detailed the time and place at which the statements were made; and it identified the defendants charged with having made those statements." *Goldman v. Belden,* 754 F.2d 1059, 1069–70 (2d Cir.1985).

■ In its proposed second amended complaint, plaintiff identifies a number of statements that it alleges were false, of which the following is a partial list. First, it alleges that defendants represented in the final Seller Supplied Information, provided pursuant to the purchase agreement signed by plaintiff, MIC and MMT, that Montenay's equity

---

**2.** Plaintiff also claims that the fraud claim was brought within the three-year limitations period because it relates back to its original claim, which was filed on January 10, 1994, and that the one-year provision has been satisfied because it was explicitly waived and because equitable, non-consensual principles of tolling apply to the one-year provision. Because the court declines to determine whether the statute of limitations is a valid defense to this action, it does not at this time assess the validity of these arguments.

contribution through December 30, 1991 would be only $12,406,816, while in fact the actual equity contribution was $19.8 million and defendants believed as of September 24, 1991 that their equity contributions through September 1991 would be $12,525,498. (2d Am.Compl. ¶¶ 24, 43.) Second, it alleges that defendants represented in the Seller Supplied Information that draws on the bank loan as of December 30, 1991 were $42 million, when in fact they were $24 million. (2d Am.Compl. ¶¶ 24, 44.) Third, plaintiff claims that defendants represented in the purchase agreement that "the Partnership has no Debt or contingent liabilities other than in respect of, or under, the Project Documents and the Financing Documents," and that "as of the Acceptance Date, the only liabilities of the Partnership or MERMCI for labor, material and overhead expenses incurred in designing, constructing and starting-up the Facility will be the payment of the obligations under the Installment Sale Agreement and the Credit Agreement." (2d Am.Compl. ¶ 26.) In fact, the plaintiff alleges, "the Partnership had a liability to Montenay of at least $4,439,000 which was not included in the Partnership's liabilities under the Project Documents, the Financing Documents, the Installment Agreement or the Credit Agreement." (2d Am.Compl. ¶ 35.)

These allegations are sufficiently particular to provide defendants with notice of the fraud with which they are charged and thus to meet the requirements of Rule 9(b). Defendants contend, however, that plaintiff's fraud claims must be dismissed because they are unaccompanied by evidence of intentional material representations, reliance, or scienter. Plaintiff has sufficiently pleaded materiality and reliance through its claims that the representations regarding the source of funding for the recovery facility and the defendants' equity contributions and liability were material because they determined what tax benefits might be expected and what price the plaintiff would pay for the project, and that plaintiff would not have entered into the investment had it known the truth. (2d Am. Compl. ¶ 38, 46, 47.) Bearing in mind that "great specificity [is] not required with respect to the allegations of knowledge and scienter," *Goldman*, 754 F.2d at 1070, the

court finds that plaintiff has adequately pled scienter. The knowledge component is satisfied by plaintiff's allegation that defendants' statement that the bank loan would total $42 million as of December 30, 1991 could not have been based on a genuine belief "since the expenses of the Project eligible for bank loan funding, clearly identified in the Facility Agreement, could not have totalled $42 million by the end of 1991," (2d Am.Compl. ¶ 44), and by the allegation that Richard Sandner, an officer of Montenay, believed in September 1991 that Montenay's equity contributions in the project through September 1991 would be $12.5 million, not the $12.4 million claimed through December 30, 1991. (2d Am.Compl. ¶ 42.) The intent component is satisfied by plaintiff's assertion that the misrepresentations were made in order to induce plaintiff to pay the purchase price of approximately $29 million. (2d Am.Compl. ¶ 45.)

Defendants also assert that the evidence to which plaintiff points to support its fraud allegations does not in fact support the allegations. First, they assert that the $100,000 difference between the September, 1991 estimate that defendants' equity investment was $12.5 million and the representations made at the closing that defendants' equity investment was $12.4 million is so minimal that it cannot support an allegation of fraud. However, the court does not have enough information to assess the impact of the $100,000 difference on the many factors that plaintiff alleges were vital to its decision to invest in the project, including the tax benefits to be expected, what price the plaintiff would pay, and whether the project would comply with Federal Energy Regulatory Commission regulations. (Pl.'s Reply Mem. in Supp. of Mot. for Leave to File 2d Am.Compl. at 4.) Defendants also assert that "$6 million of Montenay's estimated $19.8 million 'actual investment' was the amount that Montenay paid, pre-construction, to acquire its initial interest in the Project, and this had nothing whatsoever to do with the amount that Montenay later spent with respect to the *construction* of the Project." (Defs.' Reply to Opp'n to Renewed Mot. for Summ.J. & Dismissal of Am.Compl. at 6.) This claim rests on infor-

mation not contained in the pleadings. "The court's inquiry on a motion to amend a complaint is comparable to that required by Fed. R.Civ.P. 12(b)(6) as to whether the proposed amendments state a cognizable claim.... It would therefore be improper for the Court to consider facts beyond the scope of the pleading." *Polycast*, 728 F.Supp. at 943 n. 2. Furthermore, even assuming that defendants are correct, they attack only the evidence regarding their alleged statements regarding a $12.4 million equity investment in the facility, and do not address the many other alleged misrepresentations. Therefore, the claims are colorable and amendment will not be denied on this ground.

### C. Prejudice and Bad Faith

Defendants argue that the proposed fraud amendments would require them to perform burdensome duplicative discovery. First, they assert that all of their discovery to date has focussed on the alleged misrepresentations contained in the purchase agreement, and that they have conducted no discovery regarding misrepresentations allegedly contained in the investment memoranda. The plaintiff's allegations regarding the investment memoranda pertain only to the § 12(2) claim, which the court has already dismissed, so the court need not reach this argument. The defendants' emphasis on the extensive discovery that has already been conducted regarding the purchase agreement undercuts their second complaint, however, which is that the addition of the fraud claims will require extensive new discovery. Since the fraud claims rest on the same alleged misrepresentations contained in the same purchase agreement that was the focus of the § 12(2) claim, it is unlikely that the fraud claims will require much new discovery.

■■■ Defendants assert, however, that the elements of § 10(b) and common law fraud claims are so different from the ele-

ments of a § 12(2) claim that even though all the claims rest on the same transaction, the addition of the fraud claims will necessitate further discovery. The elements of fraud[3] and § 12(2) causes of action are similar. *Goodridge v. Harvey Group, Inc.*, 778 F.Supp. 115, 129 (S.D.N.Y.1991) (Lasker, J.). In particular, the materiality standard is the same in both § 10(b) and § 12(2). *Id.*

■■■ The primary difference between a § 12(2) action and a fraud action is that in the former plaintiffs need not show scienter, reliance or loss causation. *Klein v. Computer Devices, Inc.*, 591 F.Supp. 270, 277 (1984) (need not show reliance), *reh'g granted & modified on other grounds*, 602 F.Supp. 837 (S.D.N.Y.1985) (Goettel, J.); *Finkel v. Stratton Corp.*, 754 F.Supp. 318, 326 (S.D.N.Y. 1991) (Haight, J.) (need not show scienter or loss causation), *aff'd in part, rev'd in part on other grounds*, 962 F.2d 169 (2d Cir.1992). Since the scienter at issue here is the defendants', they should not need to conduct extensive discovery regarding scienter. *See Phoenix Technologies, Inc. v. TRW, Inc.*, 834 F.Supp. 148, 150–51 (E.D.Pa.1993) ("it is unlikely that plaintiff would need to conduct discovery in order to ascertain its own beliefs and intentions"). Nor is it likely that defendants will need to conduct significant additional discovery regarding plaintiff's reliance on the alleged misrepresentations and the loss that plaintiff allegedly suffered as a result—these are elements of the breach of contract and negligent misrepresentation claims that plaintiff brought in its first amended complaint. Defendants cannot claim prejudice merely because they must now defend against fraud claims—they would have had to defend against these claims if plaintiff had included them in its original complaint. *See Journal Publishing Co. v. American Home Assurance Co.*, 771 F.Supp. 632, 637 (S.D.N.Y.1991) (Leisure, J.) (had new claims been included in original com-

---

**3.** "The elements of a section 10(b) claim are '(1) fraud in connection with the purchase or sale of a security; (2) the materiality of the alleged misrepresentations or omissions; (3) scienter; (4) reliance; and (5) loss causation.'" *In re Ivan F. Boesky Secs. Litig.*, 848 F.Supp. 1119, 1124 (S.D.N.Y.1994) (Pollack, J.). The elements of a common law fraud claim under New York law

are 1) a representation of fact, 2) which is either untrue and known to be untrue or made recklessly, 3) offered to deceive the other party, 4) offered to induce reliance, and 5) proximately causing injury. *Citibank, N.A. v. K–H Corp.*, 968 F.2d 1489, 1496 (2d Cir.1992). Thus, the elements of fraud claims under federal securities law and New York common law are similar.

plaint, defendant would have had to defend against them, so defendant could show no additional burden imposed by the delay). Since the discovery deadline has not passed[4] and no depositions have been closed, the defendants are not precluded from conducting discovery regarding these elements. The court does not believe that defendants will have to undertake a significant amount of duplicative discovery, and therefore the prejudice resulting from the amendment will not be undue.

■ Defendants also assert that plaintiff has had access to the facts underlying its fraud claims since before it filed its original complaint and that plaintiff has possessed the documents underlying its fraud claims since before it filed its first amended complaint, thus raising an inference of bad faith. "[M]ere delay in presenting an amendment absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend." *Polycast,* 728 F.Supp. at 943; *see also Poloron Prods., Inc. v. Lybrand Ross Bros. & Montgomery,* 72 F.R.D. 556, 561 (S.D.N.Y.1976) (Conner, J.); *United States v. International Business Machs. Corp.,* 66 F.R.D. 223, 228–29 (S.D.N.Y.1975) (Edelstein, J.). Nor is bad faith evinced by the fact that plaintiff admittedly sought to add the fraud claims in an attempt to find a new theory of recovery after its original § 12(2) claim was precluded by the Supreme Court's ruling in *Gustafson.* "Many amendments will be afterthoughts; often they will be engendered because counsel anticipate defeat on the initial complaint.

Such realities alone do not support denial of a motion to amend." *Polycast,* 728 F.Supp. at 943 (quoting *Middle Atlantic Utils. Co. v. S.M.W. Dev't Corp.,* 392 F.2d 380, 385 (2d Cir.1968)); *see also Poloron Prods., Inc.,* 72 F.R.D. at 561 ("neither long delay nor the fact that a proposed amendment is motivated by an afterthought of counsel as to the best theory upon which to proceed, by themselves, suffice as reasons for denying leave to amend") (quoting *Green v. Wolf Corp.,* 50 F.R.D. 220, 223 (S.D.N.Y.1970)). Therefore, plaintiff may amend its complaint to add causes of action based on allegations of fraud.[5]

### IV. Protective Order

In light of this opinion, defendants' motion to stay discovery has become moot.

### V. Order

Plaintiff's motion to amend the complaint is denied insofar as it seeks to amend the § 12(2) cause of action but granted insofar as it seeks to add causes of action sounding in fraud, pursuant to § 10(b) and New York common law. Summary judgment is granted in favor of defendants on plaintiff's § 12(2) cause of action, but defendants' motion to dismiss the state law claims is denied. Defendants' motion to stay discovery is denied as moot.

**IT IS SO ORDERED.**

---

4. Defendants argue that the discovery deadline was April 7, 1995, while plaintiffs argue that discovery is far from complete and that there is no discovery deadline currently in effect. The original discovery deadline was February 1, 1995. Although discovery commenced in March, 1994, it was delayed during the summer of 1994 while the parties attempted to settle the case, and again during November and December, 1994, while defendants halted discovery pending the court's decision on their motion to dismiss the complaint. Discovery resumed in January, 1995. Both sides have voiced doubts regarding their ability to meet the discovery deadline in light of the many delays. Defendants assert that the court agreed to postpone the discovery deadline until April 7, 1995, (Friedlander Aff. ¶ 13), but neither the court nor the plaintiff has any record of this decision. (Friedman Reply Aff. ¶ 19.)

Since there seems to be no discovery deadline currently in effect, the court, in consultation with the parties, will set a new discovery deadline to accommodate the remaining discovery and any new discovery necessitated by plaintiff's amendments.

5. Defendants argue that dismissal of the § 12(2) cause of action will deprive the Court of subject matter jurisdiction over the pendent state law claims, and they request the court to dismiss those claims as well. However, in light of the court's ruling that plaintiff may amend its complaint to add a cause of action under § 10(b), the court has federal subject matter jurisdiction over the securities fraud claim and pendent jurisdiction over the state law causes of action.