**Philip FRIEDMAN and Carl Defreitas, Plaintiffs,**

v.

**WHEAT FIRST SECURITIES INC., Defendant.**

**No. 98 Civ. 8709 (RJW).**

United States District Court, S.D. New York.

Sept. 14, 1999.

**56.** *Brown v. Andrews,* 180 F.3d at 408.

**57.** *Id.* at 408–09.

Joel M. Leifer & Associates, New York City, Joel M. Leifer, of counsel, for Plaintiffs.

Bressler, Amery & Ross, P.C., New York City, Lawrence D. Ross, of counsel, for Defendant.

### OPINION

WARD, District Judge.

Defendant Wheat First Securities, Inc. ("Wheat First") has moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint filed by plaintiffs Philip Friedman ("Friedman") and Carl DeFreitas ("DeFreitas") or alternatively, stay the action pending the completion of arbitration proceedings. For the reasons hereinafter stated, Wheat First's motion to dismiss the complaint is granted.[1]

### BACKGROUND

On December 9, 1998, plaintiffs filed a complaint in this Court alleging violations of Sections 10(b) and 20 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j and 78t, Rule 10b–

5, 17 C.F.R. § 240.10b–5 and the common law.

### I. The Parties

Plaintiff Friedman is a New Jersey resident and the co-owner with Charles Gray ("Gray") of the All Star Bagel Café ("Café"), a business located in Washington Township, New Jersey. Plaintiff DeFreitas was and currently is their accountant and is also a New Jersey resident.

Defendant Wheat First is a Virginia corporation with its principal place of business in the city, county and state of New York. It is a registered securities broker and dealer and a member of the New York Stock Exchange ("NYSE") and the National Association of Securities Dealers, Inc. ("NASD").[2]

### II. Alleged Misrepresentations and Plaintiffs' Reliance Thereon

The complaint alleges that in November 1996, Robert J. Cohan, who was at that time a representative of Wheat First, made various statements to Friedman and Gray, which were also communicated to DeFreitas, concerning Zitel, a developer of computer software applications, in the hope that Friedman and Gray would open brokerage accounts with Cohan at Wheat First. Cohan made statements to Gray, Friedman, DeFreitas and other patrons at the Café, claiming that Zitel, through its investment in another company, had developed the solution to the "year 2000 problem" (the inability of existing computers to recognize the change in date from year 1999 to year 2000) and would become "the next Intel."

In addition, Cohan stated that Wheat First was a major market maker in Zitel and that he had access to "first hand knowledge about where the stock was going." Specifically, Cohan told Friedman

1. The Court's dismissal of plaintiffs' complaint on statute of limitations grounds renders a decision on defendant's alternative theory unnecessary.

2. Plaintiffs' original complaint also named as a defendant Robert J. Cohan, who was, at the

time of the events in question, a registered representative, officer and employee of Wheat First. On February 3, 1999, Cohan was dismissed from this action without prejudice. Honorable Robert J. Ward, *Notice of Dismissal Pursuant to Fed.R.Civ.P. 41(a)*, February 3, 1999.

and Gray that he had access to two senior Zitel officers named King and Harris who provided information to Cohan about the company.

Cohan also told Gray, Friedman and DeFreitas that announcements would be made that Zitel had signed contracts with "Manor Care" and "Chubb" to handle their "year 2000 problem." Cohan told them that in reaction to this announcement, Zitel stock would increase in price to between $50 and $80 by the end of 1996, and to $150 by mid–1997.

According to plaintiffs, Cohan had no basis in fact to make any of his statements concerning Zitel. Furthermore, he failed to disclose that a Wheat First trader told him that Wheat First would cease to be a market maker in Zitel due to the company's volatility, and because Wheat First had incurred large losses by investing in Zitel. Cohan also failed to inform plaintiffs that Wheat First had no securities analysts or senior officers assigned to cover Zitel. Cohan's only real source of information, unbeknownst to plaintiffs, was publicly disseminated news letters and periodicals. Furthermore, Cohan never disclosed negative information about Zitel appearing in financial periodicals or Zitel's reports filed with the Securities and Exchange Commission.

In reliance on Cohan's statements, Friedman sold shares of another stock he owned, and purchased 4,000 shares of Zitel on or about January 2, 1997, through his account at Charles Schwab & Co., Inc. (the "Schwab Account") at a price of approximately $48 per share. On January 24, 1997, after selling additional shares of another stock he owned, Friedman purchased another 2,000 shares of Zitel through his Schwab Account at a price of approximately $43 per share. Friedman continues to own the shares of Zitel and estimates that he has incurred losses exceeding $500,000.

Relying on Cohan's statements, DeFreitas purchased 1,000 shares of Zitel on December 24, 1996 through his account at Charles Schwab & Co., Inc. DeFreitas initially sold his shares of Zitel at a profit, but then bought them back based on statements made by Cohan that the stock would be worth $150 by mid–1997 and that Zitel was entering into a joint venture with IBM. In April 1997, Zitel stock suffered a "precipitous decline" in price. As a result, Schwab liquidated DeFreitas' position in Zitel at a price of approximately $14 per share when DeFreitas was unable to meet a margin call. DeFreitas incurred losses of $75,723, exclusive of margin interest charges.

## III. The Arbitration Proceeding

Friedman, DeFreitas and Gray (the "arbitration claimants") filed a Statement of Claim with the NASD Office of Dispute Resolution on or about September 17, 1997, alleging fraudulent misrepresentations and omissions of material fact made by Cohan about Zitel. *See* Affidavit of Edwin A. Zipf, Ex. A ("Zipf Aff."). Wheat First and Cohan filed a joint answer on or about January 9, 1998. At the same time, Wheat First filed an executed Submission Agreement which stated, among other things, that the parties agreed to present the matter to arbitration "in accordance with the Constitution, By–Laws, Rules, Regulations and/or Code of arbitration Procedure of the sponsoring organization." *See* Zipf Aff. Ex. B.

Wheat First filed a Motion to Dismiss the arbitration action on or about May 8, 1998. *See* Zipf Aff. Ex. C. The arbitration claimants responded to the Motion to Dismiss on or about June 3, 1998. *See* Zipf Aff. Ex. E. On or about July 20, 1998, during a pre-hearing conference, the arbitration panel verbally issued its decision, which was subsequently served on the parties on August 31, 1998, dismissing the claims of Friedman and DeFreitas against Wheat First and Cohan, "pursuant to rule 10305 of the Code of Arbitration Procedure as there was no customer agreement which required arbitration at the NASD." [3] *See* Zipf Aff. Ex. F, Ex. G.

---

**3.** NASD Code of Arbitration Rule 10305(a)    states:

Friedman and DeFreitas filed this action on December 8, 1998. On March 1, 1999, at the request of this Court and the parties, the NASD panel issued a further statement which declared, "[b]ased on the evidence presented to the panel in the initial pleadings the panel did not find evidence to provide merit to the case; however, the ruling was based on jurisdiction." · *See* Zipf. Aff. Ex. G.

## DISCUSSION

### I. Standard for Motion to Dismiss

The motion to dismiss the complaint was brought pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) provides for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In deciding such a motion, the Court must accept all well-pleaded facts as true and construe the complaint in the light most favorable to the nonmoving party. *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir.1995). A motion to dismiss under Rule 12 must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also Morales v. New York State Dep't of Corrections*, 842 F.2d 27, 30 (2d Cir.1988) (citations omitted).

■ Defendant's motion to dismiss is based primarily on statute of limitations defenses to the complaint. "While a statute of limitations defense may be raised in a motion to dismiss ... such a motion should not be granted unless it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d

Cir.1989) (quoting *Abdul–Alim Amin v. Universal Life Ins. Co.*, 706 F.2d 638, 640 (5th Cir.1983) (internal quotations omitted)); *see also Egelston v. State University College*, 535 F.2d 752, 754 (2d Cir.1976); *Banco De Desarrollo Agropecuario v. Gibbs*, 709 F.Supp. 1302, 1309–10 (S.D.N.Y.1989).

### II. Statute of Limitations Defense to Section 10(b)/Rule 10b–5 Claims

#### A. Applicable Limitations Period

The parties agree that plaintiffs' claim is governed by the "1–and–3–year" structure for Section 10(b) claims first enunciated in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). In *Lampf,* the Court borrowed from related sections of the Exchange Act to determine that claims brought pursuant to Section 10(b) "must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." 501 U.S. at 364, 111 S.Ct. 2773; *see also Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 349 (2d Cir.1993), *cert. denied,* 511 U.S. 1019, 114 S.Ct. 1401, 128 L.Ed.2d 74 (1994); *Ceres Partners v. GEL Assoc.*, 918 F.2d 349, 362 (2d Cir.1990); *Ainbinder v. Kelleher,* No. 92 CIV. 7315(SS), 1997 WL 420279, at *4 (S.D.N.Y. July 25, 1997), *aff'd,* 152 F.3d 917, 1998 WL 398799 (2d Cir. June 8, 1998); *Komanoff v. Mabon, Nugent & Co.*, 884 F.Supp. 848, 852–53 (S.D.N.Y.1995); *Falik v. Parker Duryee Rosoff & Haft,* 869 F.Supp. 228, 232 (S.D.N.Y.1994).

■ The statutory limitations period for claims under Section 10(b) begins to run "when the claim accrued or upon discovery of the facts constituting the alleged fraud." *Dodds,* 12 F.3d at 350. For the purpose of triggering the limitations period, discovery includes not only actual notice, but constructive and inquiry notice as well. *Ko-*

---

At any time during the course of an arbitration, the arbitrators may, either upon their own initiative or at the request of a party, dismiss the proceeding and refer the parties to their judicial remedies, or to any dispute

resolution forum agreed to by the parties, without prejudice to any claims or defenses available to any party.

[Amended eff. Aug. 6, 1997].

*manoff,* 884 F.Supp. at 853; *see also Dodds,* 12 F.3d at 350 ("A plaintiff in a federal securities case will be deemed to have discovered fraud for purposes of triggering the statute of limitations when a reasonable investor of ordinary intelligence would have discovered the existence of the fraud.").

▪ In the present case, there appears to be some dispute between the parties concerning when the limitations period began to run. Plaintiffs allege that they did not and could not have reasonably discovered the alleged fraudulent activities of defendant until September 1997. Defendant counters that it had to have been apparent to plaintiffs in April 1997 that Cohan's predictions regarding Zitel were not going to materialize. The Court construes the complaint in the light most favorable to plaintiffs, as it must on a Rule 12 motion to dismiss, and assumes that September 1997 is the correct start date. However, plaintiffs did not file their complaint until December 9, 1998. Therefore, even if the Court accepts September 1997 to be the relevant start date, plaintiffs failed to comply with the one-year from discovery period for Section 10(b) claims. Accordingly, plaintiffs' complaint must be dismissed unless it is saved by some tolling or estoppel theory.

**B. Tolling the Limitations Period**

Plaintiffs rely on Rule 10307(a) (formerly Section 18(a)) of the NASD Code of

Arbitration Procedure to support their tolling theory. Rule 10307(a) states:

*Where permitted by applicable law,* the time limitations which would otherwise run or accrue for the institution of legal proceedings shall be tolled where a duly executed Submission Agreement is filed by the Claimant(s). The tolling shall continue for such period as the Association shall retain jurisdiction upon the matter submitted.

[Amended eff. Oct. 1, 1984] (emphasis added).

Plaintiffs assert that pursuant to Rule 10307(a), filing an arbitration claim is, for statute of limitations purposes, the functional equivalent of filing a complaint in court. However, by its plain language Rule 10307(a) does not toll the statute of limitations unless such tolling is "permitted by applicable law."[4] The Court must therefore determine whether the law applicable to Section 10(b) claims permits tolling of the limitations period.

**1. Applicable Law**

▪ Plaintiffs contend that the "applicable law" is Section 204(b) of the New York Civil Practice Law and Rules ("New York C.P.L.R."), which operates to toll the statute of limitations during the pendency of an arbitration that results in a determination that there was no obligation to arbitrate. *See* N.Y. C.P.L.R. 204(b) (McKin-

4. The precise meaning of Rule 10307(a) is not entirely clear. If the phrase "[w]here permitted by applicable law" did not precede the remainder of the paragraph, the rule would simply be read as an explicit agreement between the parties to toll the limitations period, regardless of what the applicable state or federal tolling principles provide. However, by including the phrase the drafters seemed to limit tolling to situations in which tolling is expressly permitted by applicable law, thereby making an explicit agreement between the parties unnecessary. Nevertheless, the Court interprets the rule according to its plain language and finds that the limitations period may only be tolled where it is expressly permitted by the applicable law. Despite a lack of authority on this issue, those courts that

have been called upon to interpret Rule 10307(a) have come to the same conclusion. *See, e.g., Individual Sec., Ltd. v. Ross,* 152 F.3d 918, 1998 WL 385835, at *2 (2d Cir. May 11, 1998) (noting that the "[w]here permitted by applicable law" language of Rule 10307(a) prevented tolling of the limitations period where the applicable law, New York C.P.L.R. 204(b), did not permit tolling beyond one year after the NASD determined that arbitration was not warranted); *Cooper v. Celente,* C.A. No. 90C–JL–215, 1992 WL 240419, at *4 n. 2 (Del.Super.Ct. Sept. 3, 1992) (stating that NASD Rule 10307(a) did not toll the limitations period because "[t]he 'applicable law' in Delaware does not require tolling of the statutory period").

ney 1990).[5] Plaintiffs reason that New York is where the NASD is located, where the arbitration claim was filed and where the arbitration proceeding was held. In addition, plaintiffs point out that any application to confirm or vacate the arbitration award would have to be brought before a federal court sitting in New York.

In further support of their position, plaintiffs cite *Individual Sec. v. Ross,* 152 F.3d 918, 1998 WL 385835 (2d Cir. May 11, 1998), in which the court determined that the "applicable law" under Rule 10307(a) was New York C.P.L.R. 1998 WL 385835, at *1–2. However, *Ross* is distinguishable from the present case because it involved a diversity action premised on a state-created right, and therefore, the court was compelled to apply New York State's statute of limitations and tolling principles. *Id.* at *1 ("In this diversity action, we apply the forum state's statute of limitations.") (citing *Iacobelli Constr., Inc. v. County of Monroe,* 32 F.3d 19, 27 (2d Cir.1994)).

In the present case, where jurisdiction is based on the assertion of rights under Section 10(b) of the Exchange Act, the "applicable law" is determined by looking to federal tolling principles. Even federal courts borrowing state statutes of limitations for Section 10(b) claims prior to the *Lampf* decision recognized that federal tolling principles applied. *See, e.g., Anixter v. Home–Stake Prod. Co.,* 977 F.2d 1549, 1551 (10th Cir.1992) ("Federal law determines what circumstances will toll a state statute of limitations applied to private actions under § 10(b)."), *cert. denied,* 507 U.S. 1029, 113 S.Ct. 1841, 123 L.Ed.2d 467 (1993) (citations omitted); *Morin v. Trupin,* 799 F.Supp. 342, 347 (S.D.N.Y. 1992) ("Although federal courts look to state law for the applicable limitations period, they look to federal law for guidance as to the appropriate accrual and equitable

tolling principles.") (citing *IIT v.. Cornfeld,* 619 F.2d 909, 929 (2d Cir.1980); *Baskin v. Hawley,* 807 F.2d 1120, 1130–31 (2d Cir. 1986)); *Mittendorf v. J.R. Williston & Beane Inc.,* 372 F.Supp. 821, 833 (S.D.N.Y. 1974) (stating that the federal equitable tolling doctrine applies to Section 10(b) claims even though the court borrowed the state statute of limitations).

After the *Lampf* Court established a uniform federal statute of limitations period for Section 10(b) claims, it follows *a fortiori* that federal tolling principles govern plaintiffs' Section 10(b) claims in this case. Any confusion concerning this issue was settled by the *Lampf* Court itself. The Court expressly rejected the application of state statutes of limitations to federal Exchange Act claims. *See generally Lampf,* 501 U.S. at 354–62, 111 S.Ct. 2773. Therefore, it is this Court's task to determine if federal law permits tolling of the limitations period for Section 10(b) claims under the doctrine of equitable tolling or some other tolling principle.

### 2. Equitable Tolling

■ Under the doctrine of equitable tolling, " 'a statute of limitations does not run against a plaintiff who is unaware of his cause of action' " due to the fraudulent acts of the defendant. *Cerbone v. International Ladies' Garment Workers' Union,* 768 F.2d 45, 48 (2d Cir.1985) (quoting *Long v. Abbott Mortgage Corp.,* 459 F.Supp. 108, 113 (D.Conn.1978)).

■ As the Supreme Court has made clear, equitable tolling is not available to a claimant asserting a Section 10(b) claim. In *Lampf,* the Court concluded that "the equitable tolling doctrine is fundamentally inconsistent with the 1–and–3–year structure" applicable to Section 10(b) claims.

---

5. New York C.P.L.R. 204(b) states:
   Where it shall have been determined that a party is not obligated to submit a claim to arbitration, the time which elapsed between the demand for arbitration and the final determination that there is no obligation to arbitrate is not part of the time within

which an action upon such claim must be commenced. The time within which the action must be commenced shall not be extended by this provision beyond one year after such final determination.
N.Y. C.P.L.R. 204(b) (McKinney 1990).

501 U.S. at 363, 111 S.Ct. 2773; *see also Ainbinder,* 1997 WL 420279, at *6 n. 3; *In re Integrated Resources, Inc. Real Estate Ltd. Partnerships Sec. Lit.,* 851 F.Supp. 556, 567 (S.D.N.Y.1994).

The Court reasoned that tolling does not apply to the one-year from discovery period because, by its terms, the one-year period "begins after discovery of the facts constituting the violation, making tolling unnecessary." 501 U.S. at 363, 111 S.Ct. 2773. Furthermore, the three-year period of repose was deemed inconsistent with equitable tolling "[b]ecause the purpose of the 3–year limitation is clearly to serve as a cutoff," *id.,* and it would have no significance as an outside limit if it could be tolled.

■ Moreover, even if equitable tolling was a viable theory for Section 10(b) claimants, it would not be available for plaintiffs in the present case. Plaintiffs were clearly aware that they had a cause of action, as evidenced by their decision to file an arbitration claim with the NASD in September 1997. Therefore, plaintiffs cannot and, in fact, do not claim that any action by the defendant, fraudulent or otherwise, prevented them from knowing that they had a cause of action. Thus, equitable tolling is not available to plaintiffs because it is not permitted by applicable law,[6] and in any event, plaintiffs have not met the requirements necessary to invoke its operation. Plaintiffs have not cited, and the Court is not aware of, any other doctrine applicable to Section 10(b) claims that will toll plaintiffs' limitations period.

**6.** There is Second Circuit precedent indicating that in a federal securities case, equitable tolling will operate to stay the running of the statute of limitations as long as the plaintiff is diligent in attempting to discover the fraud which prevented him from knowing he had a cause of action. *See, e.g., Dodds,* 12 F.3d at 350; *Falik,* 869 F.Supp. at 232–33 (citations omitted). However, this is only helpful to a party who was unaware that he had a cause of action, which, as discussed above, is not the case for the present plaintiffs.

**7.** Some courts have held that in addition to equitable tolling, the equitable estoppel doc-

### 3. Contractual Tolling

■ In order to avoid the effect of the *Lampf* decision, plaintiffs argue that the limitations period should be tolled in this case because by entering into the Submission Agreement, and thereby agreeing to be bound by Rule 10307(a), the parties expressly agreed to toll the limitations period. Plaintiffs cite *ESI Montgomery County, Inc. v. Montenay Int'l Corp.,* 899 F.Supp. 1061 (S.D.N.Y.1995) in which the court determined that the *Lampf* decision does not apply to other types of tolling, such as an express waiver of the statute of limitations. *Id.* at 1066. However, *ESI Montgomery* is inapposite to the present case. In determining that the Section 10(b) claim was not clearly barred by the statute of limitations, the court relied on a letter agreement in which the parties had expressly agreed to waive the statute of limitations defense. *Id.* In the present case, the parties merely agreed to be bound by the NASD Code of Arbitration Procedure, which, as discussed above, only tolls the statute of limitations if the applicable law expressly permits such tolling. There is nothing additional in defendant's conduct or in the language of the Submission Agreement to suggest that defendant expressly agreed to waive the statute of limitations defense or the "[w]here permitted by applicable law" requirement of Rule 10307(a).

### C. Equitable Estoppel

■ Plaintiffs also attempt to avoid dismissal by arguing that equitable estoppel precludes defendant from raising the statute of limitations defense.[7] Equitable

trine is barred by the *Lampf* decision with respect to the three-year period of repose. *See, e.g., Anixter v. Home–Stake Prod. Co.,* 939 F.2d 1420, 1435–36 (10th Cir.), *amended on denial of rehearing,* 947 F.2d 897 (10th Cir. 1991), *and judgment vacated on other grounds by Dennler v. Trippet,* 503 U.S. 978, 112 S.Ct. 1658, 118 L.Ed.2d 382 (1992); *Gleusner v. Perlmutter,* No. 96–CV–2970 (JG), 1996 WL 1057146, at *2 (E.D.N.Y. Nov. 22, 1996); *Borden, Inc. v. Spoor Behrins Campbell & Young, Inc.,* 778 F.Supp. 695, 698–99 (S.D.N.Y.1991). However, the issue in the present case is the applicability of equitable estoppel to the one-year from discovery period. The Court be-

estoppel is available if plaintiffs were aware that they had a cause of action, but actions by defendant caused plaintiffs to delay in bringing their lawsuit. *Cerbone,* 768 F.2d at 49–50. It operates to toll the statute of limitations "when a party claiming to benefit from the statute carries on in such a way as to lull the other party into delay or misrepresent the situation in such a manner that equity requires tolling of the statute." *Meridien Int'l Bank, Ltd. v. Government of the Republic of Liberia,* 23 F.Supp.2d 439, 447 (S.D.N.Y.1998). In order to invoke equitable estoppel, plaintiffs must show that: "(1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff[s] would rely on it; and (2) the plaintiff[s] reasonably relied on that misrepresentation to [their] detriment." *Buttry v. General Signal Corp.,* 68 F.3d 1488, 1493 (2d Cir.1995) (citing *Heckler v. Community Health Serv.,* 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984)).

■ In the present case, equitable estoppel is not available to plaintiffs. Plaintiffs argue that by virtue of defendant's NASD membership and by executing the Submission Agreement, defendant implicitly led plaintiffs to believe they could rely on the arbitration process to toll the limitations period. Plaintiffs have not alleged any definite misrepresentation on the part of defendant that caused them to delay in filing their complaint. It is insufficient that defendant's actions implicitly led plaintiffs to believe that they could forbear from bringing their claim. *See Ainbinder,* 1997 WL 420279, at *8 (rejecting plaintiff's

equitable estoppel argument where "plaintiff [made] no allegation that defendants made any assurances to him which lulled him into allowing the statute of limitations to expire").

In *Pfister v. Allied Corp.,* 539 F.Supp. 224 (S.D.N.Y.1982), plaintiff claimed that defendant should be precluded from asserting the statute of limitations defense for the period of time during which defendant participated in settlement discussions because such discussions indirectly caused plaintiff's delay. *Id.* at 227. The court rejected the argument because plaintiff did not allege that defendant acted in bad faith or deceitfully lured plaintiff into settlement discussions or acted in any way to cause plaintiff to miss the filing deadline. *Id.* Indeed, it was plaintiff who requested that defendant engage in settlement discussions. *Id.* The present case is analogous. It was plaintiffs' choice to file their claim in arbitration and defendant merely agreed to take part in that process.[8] Defendant did not make any misrepresentation or engage in any action that caused plaintiffs to miss the September 1998 filing deadline.

■ In any event, equitable estoppel is not available to plaintiffs because it is an equitable doctrine, employed to avoid injustice in a particular case, and plaintiffs invoke it in a case where no injustice will result. *Heckler,* 467 U.S. at 59, 104 S.Ct. 2218; *see also In re Ionosphere Clubs, Inc.,* 85 F.3d 992, 999 (2d Cir.1996) ("Equitable estoppel is grounded on notions of fair dealing and good conscience and is

lieves that the equitable estoppel doctrine as applied to the one-year from discovery period is not inconsistent with *Lampf* as long as the claim is brought within the three-year period of repose. *See Berning v. A.G. Edwards & Sons, Inc.,* 774 F.Supp. 480, 484 (N.D.Ill. 1991) ("[I]t is possible for equitable estoppel to extend the time for filing [plaintiffs'] suit beyond the one-year discovery limitation to the time that they actually filed suit within the three-year repose period.") *rev'd on other grounds,* 990 F.2d 272 (7th Cir.1993).

**8.** Plaintiffs believed that filing their action with the NASD was "mandatory," but have

not offered any facts in support of that belief. Although the Court will generally construe the complaint most favorably to plaintiffs, "bald assertions and conclusions of law will not suffice." *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996) (citations omitted). It appears instead, based on the lack of a pre-dispute arbitration agreement between the parties, that plaintiffs' decision to file their claim in arbitration and their decision to forgo instituting an action in this Court until December 9, 1998 was purely voluntary.

designed to aid the law in the administration of justice where injustice would otherwise result.") (citing *Readco, Inc. v. Marine Midland Bank,* 81 F.3d 295, 301 (2d Cir.1996); *Marine Transp. Serv. Sea–Barge Group, Inc. v. Python High Performance Marine Corp.,* 16 F.3d 1133, 1138 (11th Cir.1994)). As defendant correctly points out, plaintiffs knew that their arbitration claim was going to be dismissed as early as July 20, 1998 when the arbitration panel verbally issued its decision. At that point, there was still time remaining on the limitations period, which, assuming plaintiffs' discovery date is correct, expired in September 1998. Plaintiffs nevertheless delayed filing their complaint in this Court until December 9, 1998. Plaintiffs do not allege any set of facts to explain this lack of diligence on their part. Therefore, the Court finds that dismissal will not be unfair to plaintiffs and no injustice will result.

### III. Plaintiffs' Section 20(a) Claims

Having determined that plaintiffs' Section 10(b) claims should be dismissed on statute of limitations grounds, the Court dismisses plaintiffs' Section 20(a) claim as well. "Because Section 20 merely creates a derivative liability for violations of other sections of the Act, claims under Section 20 are governed by the limitations periods for those other sections." *Dodds,* 12 F.3d at 350 n. 2 (citation omitted). Therefore, the Court's decision to dismiss plaintiffs' Section 10(b) claim applies with equal force to plaintiffs' Section 20(a) claim.

### IV. Plaintiffs' State Law Claims

Having dismissed all federal claims brought by plaintiffs, the Court declines to exercise supplemental jurisdiction over plaintiffs' state law claims and dismisses those claims pursuant to 28 U.S.C. § 1367(c)(3). *See Shahzad v. H.J. Meyers & Co., Inc.,* 923 F.Supp. 57, 60–61 (S.D.N.Y.1996); *Falik,* 869 F.Supp. at 236.

### CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the complaint is granted and the complaint is dismissed with prejudice and costs.

It is so ordered.