Rick **DEL SONTRO**, Plaintiff,

v.

**CENDANT CORPORATION,**
**Defendant.**

Civ. Action No. 01–4130 (WHW).

United States District Court,
D. New Jersey.

Aug. 12, 2002.

Daniel S. Sweetser, Esq., Lozier, Lazzaro & Sweetser, P.C., Princeton Junction, NJ, for Plaintiff, Rick Del Sontro.

Carl Greenberg, Budd Larner Gross Rosenbaum Greenberg & Sade, P.C., Short Hills, NJ, for Defendant, Cendant Corporation.

## OPINION

WALLS, District Judge.

Plaintiff Rick Del Sontro ("Plaintiff") alleges that Defendant Cendant Corporation, Inc. ("Cendant" or "Defendant") violated Sections 11 and 12(a)(2) of the Securities Act of 1933, 15 U.S.C. §§ 77k and 77l(a)(2), (the "Securities Act") and Sections 10(b) and 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78n(a), (the "Exchange Act") by including materially false and misleading financial statements for CUC International, Inc. ("CUC") in the joint registration statement and proxy/ prospectus issued in connection with the 1997 merger of CUC and HFS Inc. ("HFS") that formed Cendant.[1] Plaintiff asserts a claim for promissory estoppel out of Cendant's alleged promise to settle the claims of its employees who were excluded from the class action on the same terms as it settled with the Class.

This matter is before the Court on Defendant's Motion to Dismiss: (1) each of the federal securities law claims because they are time barred and (2) the promissory estoppel claim because there was no clear and definite promise on which Plaintiff reasonably relied. Plaintiff opposes the motion on the grounds that: (1) the federal securities law claims were filed within the applicable periods and alternatively, equitable principles prohibit defendant from raising a statute of limitations defense and (2) the promissory estoppel claim is based on Cendant's clear and definite promise to settle claims with its employees who were excluded from the class.

After Defendant filed this Motion to Dismiss, Plaintiff filed an Amended Complaint adding a claim under New Jersey's state securities laws and a Second Amended Complaint adding a breach of contract claim. Plaintiff concedes that it was improper for him to file the Second Amended Complaint without leave of court. As such, Plaintiff now moves for leave to file the Second Amended Complaint pursuant to Fed.R.Civ.P. 15(a). Defendant opposes this motion and moves to: (1) strike the amended complaints because they were filed in violation of the automatic stay provisions or (2) to strike the additional state claim because it is time barred and the breach of contract claim because the "offer" of settlement was nothing more than a gratuitous and conditional proposal. Plaintiff asserts: (1) that the automatic stay provision only applies to discovery and does not prohibit the filing of an amended complaint and (2) that the additional claims should be permitted because the state securities claims were timely filed and alternatively, equitable principles bar Defendant from raising a statute of limitations defense and the breach of contract claim is based on a legally enforceable "offer." Defendant also moves for sanctions pursuant to Rule 11 arguing that Plaintiff's claims are not warranted under existing law.

After reviewing the parties submissions and hearing oral argument, this Court: (1) grants Defendant's Motion to Dismiss Plaintiff's federal securities law claims because such claims were not filed with the applicable statute of limitations or statute of repose periods, (2) grants Defendant's Motion to Dismiss Plaintiff's promissory estoppel claim because the promise on which Plaintiff relied was not "clear and definite," (3) denies Plaintiff's Motion for

---

**1.** Although Plaintiff's complaint is devoid of facts to support his allegations, it is apparent that the claims arise from the same facts underlying the CalPERS Action.

Leave to File A Second Amended Complaint because the breach of contract claim which Defendant seeks to add is insufficient as a matter of law, (4) grants Defendant's request to strike Plaintiff's First Amended Complaint because the state securities claims are time barred, and (6) denies Defendant's Motion for Sanctions because Plaintiff's claims were not frivolous, legally unreasonable, or without factual foundation.

## FACTS AND PROCEDURAL HISTORY

Cendant was formed by the December 17, 1997 merger of HFS with and into CUC. On April 15, 1998, Cendant publicly announced its discovery of potential accounting irregularities at certain business units of the former CUC. In the wake of this announcement, Cendant's stock prices declined precipitously. On August 28, 1998 Cendant publicly announced that what it had previously described as "accounting irregularities" was really fraud. Finally on September 29, 1998, Cendant restated earnings for 1995, 1996, 1997 and the first two quarters of 1998 demonstrating that its previously reported earnings were grossly inflated. Each of these reports caused the stock to further plummet.

On April 15, 1998, Plaintiff was a Senior Vice-President of Cendant and owned about 50,000 shares of stock purchased through his exercise of options. Plaintiff sold half of his stock in mid August 1998, and sold the remaining shares in late 1998/early 1999. Plaintiff's out of pocket loss was approximately $1,000,000.

Beginning on April 16, 1998, alleged purchasers and acquirers of CUC and Cendant securities filed securities fraud lawsuits against Cendant for violations of various federal securities laws, including Sections 11 and 12(a)(2) of the Securities Act and Sections 10(b) and 14(a) of the Exchange Act. Excluded from the class definition were "officers and directors of Cendant and its subsidiaries and affiliates." (Kadet Cert. Ex.B ¶ 25.)

Plaintiff asserts that when he found out about the class action lawsuit, he asked Paul McNicol, Counsel for Cendant if Cendant wanted its employees to opt out of the class. McNicol informed Plaintiff that he had discussed the issue with James Buckman, General Counsel for Cendant, who told him that the company encouraged its employees to remain in the class. Mr. McNicol did not mention Plaintiff's exclusion from the class. For the next year and a half, Plaintiff believed that he was a member of the class. He periodically received updates about the class action from his broker, Prudential Securities. He was also provided with information from Cendant about the status of the class action via public announcements and meetings. On April 14, 2000, Plaintiff received notification from his broker stating that its "records indicate that [he] meet[s] the requirement of eligibility [for the class] outlined below." (Del Sontro Aff. at ¶ 20.) For these reasons, from 1998 to mid-April 2000, Plaintiff believed he was a member of the class.

*The Buckman Memos*

On April 20, 2000, Cendant's General Counsel, issued an interoffice memorandum (the "April 20 Memo") to all Cendant employees in which he addressed frequently asked questions concerning the settlement of securities class actions. The memo stated: "[s]pecifically excluded from the Class are the Individual Defendants and officers and directors of Cendant and its subsidiaries and affiliates." (the "Excluded Employees") (Kadet Cert. Ex.H). The memo explained:

The Board has determined that Cendant will settle claims of such persons excluded from the Class separately, at the same time and at the same amount of money as such persons would have re-

ceived had they not been excluded from the Class ... Please note, however, that this separate settlement with the persons excluded from the Class is totally voluntary on the part of Cendant and Cendant reserves the right to alter the terms of such separate settlement or to rescind its determination to provide such settlement in its sole and absolute discretion. [(the "Voluntary Settlement")]. (Kadet Cert. Ex. H). According to Plaintiff, this memo was the first information that Plaintiff received from any source indicating that he was excluded from the Class.

In March 2000, Plaintiff told the President of the Real Estate Division of his intention to leave the company if he does not receive a promotion. From mid-April to May 1, 2000, Plaintiff had several communications with Defendant's HR Department about his separation package, however, Defendant said nothing to Plaintiff about relinquishing his rights under the Settlement Plan if he left.

On April 27, 2000, Mr. Buckman sent another interoffice memorandum (the "April 27 Memo") to inform the Excluded Employees that if they wished to participate in the Voluntary Settlement they would be required to submit to Cendant a proof of claim and release, identical in form to that provided to class members, no later than July 1, 2000. (Kadet Cert. Ex. I.)

On or about May 1, 2000, Plaintiff gave Defendant formal notice that he was leaving in two weeks. According to Plaintiff, during a meeting where Plaintiff was discussing his separation package, either the Executive Vice President or the HR Manager again confirmed to Plaintiff that his separation from Defendant has no bearing on his eligibility for the Settlement Program. Further, in the days following Plaintiff's last day at Cendant, the Vice-President in Cendant's Legal Department asked Plaintiff if Cendant could deduct the balance of his $100,000 loan from his settlement payment.

On May 25, 2000 Mr. Buckman sent a third memorandum to inform the Excluded Employees of further developments with respect to the proposed Voluntary Settlement. The memo explained that the proposed Voluntary Settlement would be open only to Excluded Employees who "continue to be employees of Cendant or any of its subsidiaries and affiliates on the date that the settlement funds are distributed." (Kadet Cert. Ex. J.) This memorandum also reiterated the warning that "this proposed settlement is in the discretion of the Board and its subject to change at any time." *Id.*

Plaintiff alleges that on June 29, 2000, he submitted his Proof of Claim and Release to Defendant. Plaintiff explains that he was entitled to $500,000 under the Settlement Program and that he expected to receive his settlement payment within a year. A few weeks after Plaintiff left Cendant, Plaintiff became aware of the May 25, 2000 memo and that Cendant denied his claim under the Settlement Program because he no longer worked for the Company.

On August 28, 2001—more than three years and four months after Cendant disclosed accounting irregularities—Defendant filed his complaint.

### *DISCUSSION*

### I. Motion to Dismiss Federal Securities Law Claims

#### *Standard For Motion to Dismiss*

On a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-

moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir.1994). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). While a court will accept well-plead allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegation. *See Miree v. DeKalb County, Ga.,* 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). Moreover, the claimant must set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist. *See* Fed.R.Civ.P. 8(a)(2); *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### Statute of Limitations for Federal Securities Law Claims

Section 13 of the Securities Act, 15 U.S.C. § 77m, sets forth the limitations period applicable to claims brought under Sections 11 and 12 of that Act. *See Ballay v. Legg Mason Wood Walker, Inc.,* 925 F.2d 682, 691 (3d Cir.1991). Section 13 states, in relevant part, that:

> No action shall be maintained to enforce any liability created under [Section 11] or [Section 12(a)(2)] of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence ... In no event shall any such action be brought to enforce a liability created under [Section 11] ... of this title more than three years after the security was bona fide offered to the public, or under [Section 12(a)(2)] of this title more than three years after the sale.

15 U.S.C. § 77m. This statute creates a one-year statute of limitations framed by a three-year statute of repose. *See Green v. Fund Asset Mgmt., L.P.,* 19 F.Supp.2d 227, 232 (D.N.J.1998)(applying the one-year/three-year limitations period to claims under the Investment Company Act); *see also Whitlock Corp. v. Deloitte & Touche, L.L.P.,* 233 F.3d 1063, 1064–65 (7th Cir.2000).

The three-year period is not tied to discovery of a fraud, but instead begins to run immediately upon the accrual of the cause of action. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 363–64, 111 S.Ct. 2773, 115 L.Ed.2d 321. As such, it serves as an absolute bar to any claims brought more than three years after accrual, regardless of when a plaintiff discovered or could have discovered that he had a claim. *See id.* at 363, 111 S.Ct. 2773. As indicated by the legislative history "Congress included statutes of repose because of fear that lingering liabilities would disrupt normal business and facilitate false claims. It was understood that the three year rule was to be absolute." *Norris v. Wirtz,* 818 F.2d 1329, 1332 (7th Cir.1987) (*overruled on other grounds*); *see also* H.R.Conf.Rep. No. 1838, 73d Cong., 2d Sess. 32, 36, 42 (1934); 78 Cong.Rec. 8198–8203 (May 7, 1934).

A claim under Section 10(b) of the Exchange Act is subject to similar limitations and repose periods. *See Lampf, Pleva, Lipkind, Prupis & Petigrow,* 501 U.S. at 364, 111 S.Ct. 2773; *In re Data Access Sys. Sec. Litig.,* 843 F.2d 1537, 1550 (3d Cir.1988). In *Lampf,* the United States Supreme Court held that, although Congress never specifically created a limitations period for an implied right of action under Section 10(b), private actions under 10(b) must be filed within one year after the fraud was or should have been discov-

ered, and in no event more than three years after the occurrence of the fraud. 501 U.S. at 364, 111 S.Ct. 2773. The same rule applies to actions under Section 14(a) of the Exchange Act. *See Westinghouse Elec. Corp. By Levit v. Franklin,* 993 F.2d 349, 353 (3d Cir.1993) (holding that for purposes of determining the appropriate limitations period, actions under Section 14(a) are treated identically to actions under 10(b)).

■ Courts within the Third Circuit have uniformly adopted an "inquiry notice" standard to resolve the question of when a plaintiff should have learned the existence of a cause of action under the federal securities laws. *See e.g. Rosen v. Communication Services Group, Inc.,* 155 F.Supp.2d 310, 323 (E.D.Pa.2001). Under this standard, the one-year period begins to run when a plaintiff "discovered or in the exercise of reasonable diligence should have discovered the basis for [his] claim" against the defendant. *Gruber v. Price Waterhouse,* 697 F.Supp. 859, 863 (E.D.Pa. 1988). To make this determination, courts must determine when plaintiffs had sufficient information of possible wrongdoing to place them on "inquiry notice" or to excite "storm warnings" of culpable activity. *Rosen,* 155 F.Supp.2d at 323; *see also Tobacco & Allied Stocks, Inc. v. Transamerica Corp.,* 143 F.Supp. 323, 329 (D.Del.1956), *aff'd* 244 F.2d 902 (3d Cir. 1957). Once plaintiffs are on inquiry notice, they must exercise reasonable diligence to uncover the basis for their claims and are held to have constructive notice of all facts that could have been discovered during the limitations period. *Gruber,* 697 F.Supp. at 864.

### Equitable Tolling and Equitable Estoppel

■ Under the doctrine of equitable tolling, " 'a statute of limitations does not run against a plaintiff who is unaware of

his cause of action' due to the fraudulent acts of the defendant." *Friedman v. Wheat First Sec. Inc.,* 64 F.Supp.2d 338, 346 (S.D.N.Y.1999) (*quoting Cerbone v. Int'l Ladies' Garment Workers' Union,* 768 F.2d 45, 49–50 (2d Cir.1985)). Similarly, "[e]quitable estoppel is established where there is conduct that amounts to a misrepresentation of material facts, unknown to the party misled, done with the expectation that the misled party will change his position based on the conduct, and that party in fact changes his position." *Rodichok v. Limitorque Corp.,* No. Civ. A. 95–3528, 1997 WL 392535 (D.N.J. July 8, 1997)(*citing Carlsen v. Masters, Mates & Pilots Pension Plan Trust,* 80 N.J. 334, 339, 403 A.2d 880 (1979)).

The Seventh Circuit has explained that the difference between these two theories is that unlike equitable tolling, equitable estoppel "is not concerned with the running and suspension of the limitations period, but rather comes into play only after the limitations period has run and addresses itself to the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period." *Bomba v. W.L. Belvidere, Inc.,* 579 F.2d 1067, 1070 (7th Cir.1978).

### Defendant's Argument

Defendant asserts that Plaintiff's federal securities law claims should be dismissed as time-barred because they were not filed within one year of the date on which Plaintiff discovered or should have discovered the fraud. By April 15, 1998, the date Cendant disclosed publicly its discovery of the accounting irregularities, Plaintiff knew or should have known of the existence of his claims. However, Plaintiff did not assert his securities claims until nearly three and one-half years later, on August

28, 2001. Further, Defendant argues that even if Plaintiff could save his claims from the one-year limitations period, these claims are still untimely under the three-year period of repose which began to run on April 1, 1998, the date of Plaintiff's last transaction in Defendant's securities. Finally, Defendant contends that equitable tolling is inapplicable to the one-three year structure of federal securities law claims. Similarly, Defendant asserts that equitable estoppel is not applicable to such actions.

***Plaintiff's Argument***

Plaintiff argues that Defendant is equitably estopped from raising a limitations defense. He claims that equitable estoppel may be applied in cases where the limitations statute contains "in no event" language like that at issue here. *See Glus v. Brooklyn Eastern District Terminal,* 359 U.S. 231, 232–234, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959). According to Plaintiff, the only reason that this action was not filed long ago was because of the representations of Defendant: First, from 1998 until April 20, 2000, Defendant represented and otherwise led Plaintiff to believe that he was a member of the class. Second, from April 20, 2000 to September 2001, defendant represented to Plaintiff that his claim would be settled.

In the alternative, Plaintiff argues that he met the applicable limitations and repose periods. Plaintiff asserts that he met the one-year limitations period because he filed his complaint within one-year of learning that Cendant intended to breach its settlement agreement. Plaintiff contends that he did not discover that he had a cause of action apart from the class action until April 20, 2000. Contemporaneous with Plaintiff finding out that he was not a member of the class, defendant offered him a settlement which he accepted. Plaintiff did not find out until late August/September 2000 that Defendant intended to breach the settlement agree-

ment and he filed his complaint on August 28, 2001. Plaintiff further contends that he met the applicable repose period because he filed his complaint within three years of Defendant's full and complete disclosure of its fraud. The true extent of the fraud committed by the defendant was not made public until the Audit Report was filed with the SEC on August 28, 1998. Further, Defendant did not file its amended financial reports restating the fraudulently reported earnings for the subject years until September 1998.

***Analysis***

 This Court finds that Plaintiff's federal securities law claims are untimely and cannot be salvaged by equitable tolling or equitable estoppel. First, Plaintiff's federal securities claims were filed after the expiration of the three-year period of repose. The three-year period is not tied to discovery of a fraud, but instead begins to run immediately upon the accrual of the cause of action. *See Lampf, Pleva Lipkind, Prupis & Petigrow,* 501 U.S. at 363–64, 111 S.Ct. 2773. As such, it is an absolute bar to any claims brought more than three years after accrual. *Id.* at 363, 111 S.Ct. 2773. An action under Section 11 of the Securities Act must be brought within three years of the date on which the security at issue was offered to the public, and a claim under Section 12(a)(2) of the Securities Act must be brought within three years of the "sale" of the security at issue. *See S.E.C. v. Seaboard Corp.,* 677 F.2d 1301, 1308 (9th Cir.1982). Although Plaintiff's complaint is not specific in describing the transactions upon which he complains, it appears that his Securities Act claims arise from his exchange of shares in the December 17, 1997 merger of CUC and HFS. (Compl. at ¶¶ 6–7, 17, 19–22.) Accordingly, the three-year period of repose on his Securities Act claims expired by

December 17, 2000, over eight months before he filed his complaint.

■ Similarly, actions under Sections 10(b) and 14(a) of the Exchange Act arise on the date the allegedly false or misleading statement underlying the claims was made. *See Lampf, Pleva Lipkind, Prupis & Petigrow*, 501 U.S. at 358–59, 111 S.Ct. 2773. Plaintiff's complaint identifies only one date on which Defendant is alleged to have made any false or misleading statement, i.e. August 28, 1997, when CUC and HFS issued their joint proxy/prospectus in connection with the merger that formed Cendant. Even if this Court assumes that Cendant made a false and misleading statement as late as April 1, 1998 (the last date on which Plaintiff alleges he transacted in Cendant securities before disclosure of the fraud, the three-year period of repose would have expired on April 1, 2001, over four months before he filed his complaint.)

■ This Court disagrees with Plaintiff's argument that his complaint was filed within the repose period because it was filed within three years of Cendant's full and complete disclosure of its illegal activities. As discussed, the period of repose begins to run from accrual of a claim, rather than discovery. Therefore, the time of Cendant's complete disclosure is irrelevant to a determination of when the repose period began to run.

■ Assuming that Plaintiff's claims survived the repose period they would still be untimely because they were not filed within one year of Plaintiff's discovery of the untrue statement. Here, Plaintiff discovered the untrue statement on April 15, 1998 when Defendant publicly announced accounting irregularities. This disclosure was sufficient to put plaintiff on "inquiry notice" so that he should have discovered the existence of his securities law claims. *See id.* at 364, 111 S.Ct. 2773; *Westinghouse Elec. Corp. v. Franklin*, 993 F.2d

349, 353 (3d Cir.1993); *Green v. Fund Asset Mgmt., L.P.*, 19 F.Supp.2d 227, 232–33 (D.N.J.1998). Accordingly, Plaintiff was required to bring his federal securities claims no later than April 15, 1999. Even if this court were to go a step further in trying to save Plaintiff's claim and find that the statute did not start to run until Plaintiff admits that he knew that he was excluded from the class, on April 20, 2000, when he received the memo, his claim would still be untimely.

■ This Court disagrees with Plaintiff's assertion that the one-year period did not begin to run until late August/ September 2000, when he was aware that Cendant planned to breach the settlement agreement. Plaintiff's federal securities claims are not based on the breach of this agreement. There is no basis for this court to determine that the limitations period did not begin to run until Plaintiff was on notice of this potential breach. Accordingly, Plaintiff's complaint must be dismissed unless it is saved by some doctrine of tolling or estoppel.

■ It is clearly established that equitable tolling is inapplicable to the one-and-three year limitation periods of securities fraud actions. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. at 363, 111 S.Ct. 2773; *see also Webb v. United States*, 66 F.3d 691, 700 (4th Cir. 1995) (holding that like securities fraud cases, traditional principles of equitable tolling are not available in tax refund cases). As the United States Supreme Court held in *Lampf*, "it is evident that the equitable tolling doctrine is fundamentally inconsistent with the 1—and 3–year structure." 501 U.S. at 363, 111 S.Ct. 2773. The Court explained that "[t]he 1–year period, by its terms, begins after discovery of the facts constituting the violation, making tolling unnecessary" and "[t]he 3–year is a period of repose inconsistent with

tolling .... the purpose of the 3–year limitation is clearly to serve as a cutoff." *Id.*[2]

■■■ Some courts have held that in addition to equitable tolling, the equitable estoppel doctrine is barred by the *Lampf* decision with respect to the three-year period of repose. *See Webb*, 66 F.3d at 700; *see also Friedman v. Wheat First Securities Inc.*, 64 F.Supp.2d 338, n. 70 (S.D.N.Y. 1999); *Anixter v. Home–Stake Prod. Co.*, 939 F.2d 1420, 1435–36 (10th Cir.), *amended on denial of rehearing*, 947 F.2d 897 (10th Cir.1991), *and judgement vacated on other grounds by Dennler v. Trippet*, 503 U.S. 978, 112 S.Ct. 1658, 118 L.Ed.2d 382 (1992); *Gleusner v. Perlmutter*, No. 96–CV–2970, 1996 WL 1057146 at *2 (E.D.N.Y. Nov. 22, 1996); *Borden, Inc. v. Spoor Behrins Campbell & Young, Inc.*, 778 F.Supp. 695, 698–99 (S.D.N.Y.1991). This Court agrees and finds that equitable estoppel does not prevent Defendant from raising the repose period as a defense. Because Plaintiff's securities claims are untimely under the repose period, this Court refrains from determining whether equitable estoppel is applicable to the one year limitations period. *See Berning v. A.G. Edwards & Sons, Inc.*, 774 F.Supp. 480, 484 (N.D.Ill.1991) ("[I]t is possible for equitable estoppel to extend the time for filing suit beyond the one-year discovery limitation to the time that they actually filed suit within the three-year repose period.") (*reversed on other grounds* ).

As such, this Court finds that Plaintiff's federal securities claims are untimely and cannot be saved by any equitable principles. The two cases cited by Plaintiff are not to the contrary as neither was brought under the securities laws and are distinguishable because the statutes there only included a statute of limitation and no repose period. *See Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959); *Bomba v. W.L. Belvidere, Inc.*, 579 F.2d 1067 (7th Cir.1978).

## II. Motion to Dismiss Promissory Estoppel Claim

### Standard for Promissory Estoppel Claims

■■■ Quasi-contractual liability such as promissory estoppel is based on the equitable principle that a person should not be allowed to unjustly enrich himself at the expense of another. *See Rodichok v. Limitorque Corp.*, 1997 WL 392535 (D.N.J.1997). Under New Jersey law, to recover on a theory of promissory estoppel, a plaintiff must allege and prove that:

(1) there was a clear and definite promise; (2) the promise was made with the expectation that the promisee would rely upon it; (3) the promisee reasonably did rely on the promise; and (4) [the promisee] incurred a detriment in said reliance.

*Swider v. Ha–Lo Indus.*, 134 F.Supp.2d 607, 619 (D.N.J.2001)(*citing Peck v. Imedia Inc.*, 293 N.J.Super. 151, 165, 679 A.2d 745, 752 (App.Div.1996)). Indefinite promises or promises subject to change by the promisor are not "clear and definite" and cannot give rise to a claim for promissory estoppel. *Aircraft Inventory Corp. v. Falcon Jet Corp.*, 18 F.Supp.2d 409, 416 (D.N.J.1998); *see also Malaker Corp. Stockholders Protective Comm. v. First*

---

**2.** It should be noted that the Seventh Circuit found that rather than saying equitable tolling and related doctrines are inapplicable, it is more accurate to say that those doctrines are applicable but "do not extend the period of limitations by more than the two-year grace period § 13 allows." *See Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385, 1391 (7th Cir. 1990). "Congress did not obliterate these valuable doctrines so much as it set bounds on the length of delay." *Id.*

*Jersey Nat'l Bank,* 163 N.J.Super. 463, 479, 395 A.2d 222, 230 (App.Div.1978)(a clear and definite promise is the *sine qua non* for the applicability of promissory estoppel).

### Defendant's Argument

Defendant argues that Plaintiff fails to state a legally cognizable claim for promissory estoppel. Defendant asserts that the alleged "promise" contained in the April 20 Memo, and purportedly reiterated by Mr. Buckman orally, was not by its terms "clear and definite" and thus cannot give rise to a claim for promissory estoppel. The memo explicitly warned that "this separate settlement ... is totally voluntary ... and Cendant reserves the right to alter the terms ... or to rescind its determination to provide such settlement in its sole and absolute discretion." (Kadet Cert. Ex. H at 2). At best, this language created an indefinite promise, in that Cendant could alter its terms in any manner or rescind it completely at any time. As a matter of law, such a "promise" cannot form the basis for a claim of promissory estoppel.

Defendant argues that even if the court were to find that the promise was clear and definite, the promissory estoppel claim would still fail as a matter of law because Plaintiff's reliance on a conditional promise was unreasonable.

### Plaintiff's Argument

Plaintiff argues that he states a viable cause of action for promissory estoppel because Cendant's promise to settle his securities claims for the same amount that he would have received under the class action settlement was "clear and definite" as was its promise that continued employment was not a requirement. Plaintiff asserts that the boilerplate warning contained in the Settlement Program does not make the promise of settlement indefinite. Further, the promise that his resignation

would not bar his participation in the Settlement Program was not qualified.

Plaintiff further asserts that the promise was made with the expectation of reliance. When Cendant employees told Plaintiff that his resignation would not exclude him from the Settlement Program, they knew that Plaintiff intended to resign shortly. Also, Plaintiff reasonably relied on Defendant's representations. Finally, Plaintiff asserts that he suffered between $500,000 to $700,000 in detriment.

### Analysis

■■■ This court finds that Plaintiff's claim for promissory estoppel fails as a matter of law because the "promise" was not "clear and definite" and the promisee's reliance on the promise was not reasonable. Plaintiff seeks to characterize the proposed Voluntary Settlement as described in the April 20 Memo as a "clear and definite" promise by not including the warning that the settlement "is totally voluntary ... and Cendant reserves the right to alter the terms ... or to rescind its determination to provide such settlement in its sole and absolute discretion." (Kadet Cert. Ex. H at 2). However, this indefinite proposal, subject to modification or withdrawal at Cendant's sole discretion, cannot form the basis of a promissory estoppel claim. *See Bonczek,* 701 A.2d at 746 (promise must be clear, unconditional and definite); *see also Perlin v. Board of Educ.,* 86 Ill.App.3d 108, 114, 41 Ill.Dec. 294, 407 N.E.2d 792, 798 (1980)(promise must be "unambiguous").

The only case that Plaintiff cites to support its position that the "promise" is "clear and definite," *Peck v. Imedia Inc.,* is distinguishable from the case at bar. 293 N.J.Super. 151, 679 A.2d 745 (N.J.Super.Ct.App.Div.1996). In *Peck,* the defendant made an unconditional offer of employment to the Plaintiff, and never indicated that the offer could be

withdrawn before Plaintiff began her employment. *Id.* The court found this promise sufficiently definite to support a claim for promissory estoppel. *Id.* at 753. Here, however, Defendant's proposal of the Voluntary Settlement was qualified entirely by its warning that the proposal could be modified or withdrawn at Cendant's sole option. Thus *Peck* does not preclude a finding that the promise here was not "clear and definite."

■ Furthermore, Defendant's purported reliance on the April 20 Memo's indefinite promise and on alleged statements made to him by Defendant's executives was unreasonable as a matter of law. *See Swider v. Ha–Lo Indus., Inc.,* 134 F.Supp.2d 607, 619 (D.N.J.2001). As the Third Circuit has held, the "reliance upon a mere expression of future intention cannot be 'reasonable,' because such expressions do not constitute a sufficiently definite promise." *See In re Phillips Petroleum Sec. Litig.,* 881 F.2d 1236, 1250 (3d Cir.1989)(*quoting Santoni v. Fed. Deposit Ins. Corp.,* 677 F.2d 174, 179 (1st Cir.1982)). " '[A] truthful statement as to the present intention of a party with regard to his future acts is not the foundation upon which an estoppel may be built. The intention is subject to change.' " *Derry Finance N.V. v. Christiana Cos., Inc.,* 616 F.Supp. 544, 550 (D.Del.1985), (*quoting Metropolitan Life Ins. Co. v. Childs Co.,* 230 N.Y. 285, 130 N.E. 295, 298 (1921)), *aff'd,* 797 F.2d 1210 (3d Cir.1986). Here Cendant expressed its intention to settle with Plaintiff, but it clearly reserved the right to "rescind its determination to provide such settlement in its sole and absolute discretion." (Kadet Cert. Ex. H at 2). It was legally unreasonable for Plaintiff to rely on such an indefinite intent to settle.

## III. Defendant's Motion to Strike the Amended and Second Amended Complaints and Plaintiff's Motion for Leave to File A Second Amended Complaint

### *Standard for Amending Complaints*

■ Pursuant to Fed.R.Civ.P. 15(a), once a response to a party's pleading is served, that pleading may be amended only by leave of court or by written consent of the adverse party. Rule 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). A general presumption exists in favor of allowing a party to amend its pleadings. *Boileau v. Bethlehem Steel Corp.,* 730 F.2d 929, 938 (3d Cir.), *cert. denied,* 469 U.S. 871, 105 S.Ct. 221, 83 L.Ed.2d 150 (1984). Leave to amend a complaint should be granted freely in the absence of undue delay or bad faith on the part of the movant as long as the amendment would not be futile and the opposing party would not suffer undue prejudice. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Adams v. Gould Inc.,* 739 F.2d 858, 864 (3d Cir.1984), *cert. denied,* 469 U.S. 1122, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985).

■ "[A] refusal of a motion for leave to amend must be justified," and the Third Circuit has identified the following as permissible justifications: "(1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the opposition; (4) repeated failures to correct deficiencies with previous amendments; and (5) futility of the amendment." *Riley v. Taylor,* 62 F.3d 86, 90 (3d Cir.1995) (*citing Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)). "Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss." *Jablonski v.*

*Pan American World Airways, Inc.,* 863 F.2d 289, 292 (3d Cir.1988).

### Defendant's Argument

Defendant argues that the federal securities laws prohibited Plaintiff from filing the Amended Complaint and the Second Amended Complaint once Defendant moved to dismiss the Complaint. The automatic stay provision, found in the section titled "Stay of Discovery" provides that "all ... proceedings shall be stayed during the pendency of any motion to dismiss." 15 U.S.C. § 77z–1(b)(1); 15 U.S.C. § 78u–4(b)(3)(B). Defendant asserts that this provision is not limited to discovery, despite its title, and is also applicable to amending pleadings. It is well established that "the title of a statute and the heading of a section cannot limit the plain meaning of the text." *Brotherhood of R.R. Trainmen v. Baltimore & O.R. Co.,* 331 U.S. 519, 529, 67 S.Ct. 1387, 91 L.Ed. 1646. From its plain meanings, this provision stays *all* proceedings, not only discovery.

Plaintiff's Motion For Leave To Amend should be denied because amendment would be futile. *See Foman,* 371 U.S. at 182, 83 S.Ct. 227. An assessment of " 'futility is governed by the same standard of legal sufficiency that applies' " to a motion to dismiss. *Oran v, Stafford,* 226 F.3d 275, 291 (3d Cir.2000)(*citing Oran v. Stafford,* 34 F.Supp.2d 906 (D.N.J.1999)). Thus, "if the proposed amendment is 'frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend.' " *Witherspoon v. Rent–A–Center, Inc.,* 173 F.Supp.2d 239, 243 (D.N.J.2001) (*citing* 6 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure § 1487, at 637–642 (2d ed.1990)).

### Plaintiff's Argument

Plaintiff argues that because the stay provisions of both Acts is entitled "Stay of Discovery," these statutes apply solely to discovery matters. 15 U.S.C. § 77z–1(b)(1); 15 U.S.C. § 78u–4(b)(3)(B). Therefore, the statutes do not apply to, and do not bar, Plaintiff from amending its pleadings.

Plaintiff concedes that the Second Amended Complaint was erroneously filed without leave of court due to an oversight by counsel. Plaintiff now moves for leave to submit the Second Amended Complaint under Rule 15(a) because there has been no undue delay, bad faith nor any repeated failure to cure a deficiency in this case. Further, according to Plaintiff, Defendant will suffer no prejudice if leave is granted because the Second Amended Complaint merely adds a breach of contract cause of action arising out of the same set of core facts alleged in the original and first amended complaints.

### Analysis

This Court refrains from determining whether the automatic stay provisions of the Securities Act and Exchange Act prohibit Plaintiff from amending the complaint. Rather, this court will assume that the stay provision is inapplicable and will reach the merits of the proposed amendments. This Court denies Plaintiff's Motion For Leave To File A Second Amended Complaint to add the breach of contract claim because Plaintiff has failed to demonstrate that there was a legally enforceable offer. Similarly, Defendant's request to Strike Plaintiff's First Amended Complaint which added a state securities claim should be granted because the state claim was not timely filed and the doctrine of equitable estoppel does not prevent Defendant from asserting a limitations defense.

### A. Breach of Contract

### Standard for Legally Enforceable Offer

New Jersey Courts, in accordance with the Restatement, define an illusory promise as, a "promise which by [its] terms make[s] performance entirely op-

tional with the promisor whatever may happen, or whatever course of conduct in other respects he may pursue." Restatement (Second) of Contracts § 2, comment e (1979); *Curtis Elevator Co. v. Hampshire House, Inc.,* 142 N.J.Super. 537, 542, 362 A.2d 73 (Law Div.1976). Under an illusory promise, the "promisor has committed himself not at all." J.D. Calamari and Joseph M. Perillo, Contracts, § 4–17 at 159 (2d ed. 977). Accordingly, a promise is deemed illusory and unenforceable if performance is entirely optional with a promisor. *See Bryant v. City of Atlantic City,* 309 N.J.Super. 596, 707 A.2d 1072, 1085 (App.Div.1998) (finding that a contract was not illusory because it did not give the promisor unfettered discretion to unilaterally terminate the agreement, except upon the occurrence of events outside of its control). A promise is not illusory, however, if the power to terminate is dependant on something outside the promisor's control, such as the promisee's nonperformance, or the happening of some natural disaster. *Id.* Generally, courts should seek to enforce contracts and avoid deeming them illusory. *Russell v. Princeton Labs. Inc.,* 50 N.J. 30, 38, 231 A.2d 800 (N.J.1967).

### Defendant's Argument

Defendant argues Plaintiff's request for leave to file a breach of contract claim should be denied because there was no valid and enforceable offer. The April 20 Memo announcing the Voluntary Settlement contained explicit language warning its recipients that the proposal could be modified or withdrawn at Defendant's sole option. (Kadet Cert. Ex. H at 2). Thus, the proposal fits squarely within the definition of an illusory promise and cannot form the basis of a contract.

### Plaintiff's Argument

Plaintiff argues that he states a valid breach of contract claim because Defen-

dant expressly offered to settle all claims of all of its "officers" under the same terms as the class action settlement. All that Defendant required of these officers, including Plaintiff, to accept the settlement offer was the filing of certain paperwork by July 1, 2000. Plaintiff submitted the required paperwork demonstrating his acceptance of the offer. As of the date of acceptance, the parties had a valid and enforceable contract.

Plaintiff asserts that there was nothing illusory or indefinite about the terms of Defendant's offer. Plaintiff argues that all offers to enter into a contract are voluntary and may be withdrawn at anytime before acceptance, unless the offer is made irrevocable. Plaintiff argues that a jury presiding over this trial could conclude that the memo's proposal constituted an offer and that Plaintiff was justified in his understanding that if he accepted the offer, then the parties would have an enforceable settlement agreement.

### Analysis

■ This Court finds that Plaintiff's breach of contract claim is insufficient as a matter of law. New Jersey courts define an illusory promise as "a promise which by [its] terms make[s] performance entirely optional with the promisor." *Bryant,* 707 A.2d at 1085. Here, the April 20 Memo announcing the Voluntary Settlement contained explicit language warning that the proposal could be modified or withdrawn at promisor's sole option: "Cendant reserves the right to alter the terms ... or to rescind its determination to provide such settlement in its sole and absolute discretion." (Kadet Cert. Ex. H at 2). By explicitly stating that it could, without warning, alter or rescind the Voluntary Settlement, Defendant did not commit itself to perform. *See Bryant,* 707 A.2d at 1085. It is well settled law that no contract can be formed based on such a prom-

ise. *Id.; see also Friedman v. Tappan Dev. Corp.*, 22 N.J. 523, 126 A.2d 646 (N.J.1956).

Plaintiff advances no authority to the contrary. The only support Plaintiff offers is a New Jersey model jury charge that provides that an offer occurs where a party communicates a willingness to enter into a contract "under circumstances [that] justify the other party's understanding that if accepted, an agreement would result." New Jersey Model Civil Jury Charge 4.10.[3] This charge does not support Plaintiff's argument because the circumstances under which Defendant proposed the Voluntary Settlement—that is, with an explicit warning that the proposal could be modified or withdrawn at Defendant's sole option—could not, as a matter of law, have justified any conclusion by Plaintiff that his purported acceptance of the proposal would form a binding contract. *See e.g., Bryant*, 707 A.2d at 1085.

## B. State Securities Law Claims

### Statute of Limitations for State Securities Law Claims

Section 49:3–47 of the New Jersey Uniform Securities Law, N.J.S.A.(the "USL") provides in relevant part:

No person may bring an action under this section more than two years after the contract of sale or the rendering of the investment advice, or more than two years after the time when the person aggrieved knew or should have known of the existence of his cause of action, whichever is later.

N.J.S.A. 49:3–71(g).

### Equitable Estoppel and Equitable Tolling

As explained, the doctrine of equitable tolling prevents a statute of limitations

from running " 'against a plaintiff who is unaware of his cause of action' due to the fraudulent acts of the defendant." *Friedman v. Wheat First Sec. Inc.*, 64 F.Supp.2d 338, 346 (S.D.N.Y.1999) (*quoting Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 49–50 (2d Cir.1985)). Similarly, "[e]quitable estoppel is established where there is conduct that amounts to a misrepresentation of material facts, unknown to the party misled, done with the expectation that the misled party will change his position based on the conduct, and that party in fact changes his position." *Rodichok v. Limitorque Corp.*, No. Civ. A. 95–3528, 1997 WL 392535 (D.N.J. July 8, 1997)(*citing Carlsen v. Masters, Mates & Pilots Pension Plan Trust*, 80 N.J. 334, 339, 403 A.2d 880 (1979)).

### Defendant's Argument

Defendant argues that Plaintiff's claim under the USL is time barred. He asserts that Plaintiff was required to file his complaint within two years from April 15, 1998, when he knew or should have known that he had a claim, however, he did not file his claim until August 28, 2001. Furthermore, Plaintiff's claim cannot be saved by any principles of tolling or estoppel. Defendant asserts that the concept of equitable tolling is unavailable because the USL already contains a "discovery" period. *See LaFage v. Jani*, 166 N.J. 412, 766 A.2d 1066 (N.J.2001). Alternatively, defendant argues that even if applicable, tolling would not save Plaintiff's claim because it would only bar the statute from running while plaintiff believed he was a purported class member, i.e., until December 14, 1998, if not earlier. As such, Plaintiff would have been required to file suit by

---

**3.** Notwithstanding that New Jersey Model Jury Charges do not have the force of control-

ling legal precedent.

December 14, 2000, more than a year before he actually filed his complaint. Furthermore, tolling could not save Plaintiff's USL claims because they were not alleged in the original putative CalPERS class action. Finally, the doctrines of equitable tolling and estoppel are inapplicable to Plaintiff's USL claim because the two-year statute of limitations expired before any alleged conduct by Defendant that could possibly give rise to such a claim.

### Plaintiff's Argument

Plaintiff asserts that his securities claim is not time barred because he filed this action within two years of Defendant informing him that he was excluded from the class in the April 20, 2000 Memo. Alternatively, Plaintiff argues that Defendant is equitably estopped from raising a statute of limitations defense to Plaintiff's state securities claim. New Jersey Law dictates that the "[s]tatute of limitations should not be a shield against legitimate claims when equity requires otherwise or that an estoppel be invoked." *Friedman v. Friendly Ice Cream Co.*, 133 N.J.Super. 333, 338, 336 A.2d 493 (App.Div.1975). The New Jersey Supreme Court has declared that statutes of limitations will not be mechanically applied "when they would unnecessarily sacrifice individual justice under the circumstances." *Zaccardi v. Becker*, 88 N.J. 245, 258, 440 A.2d 1329 (N.J.1982). Here, Defendant's misrepresentations to Plaintiff were the sole reason that he did not pursue private legal action years ago. Plaintiff also argues that although the state securities claim was not raised in the class action lawsuit, the state claim is substantially identical to the federal claims raised in the class action. *Kaufman v. i-Stat Corp.*, 165 N.J. 94, 754 A.2d 1188 (N.J.2000). As such Defendant will not suffer any undue prejudice if plaintiff is permitted to prosecute his state securities claim.

### Analysis

■ This Court finds that Plaintiff's claim under the USL is barred by that statute's two-year limitations period. Plaintiff was required to file his claim within two years from April 15, 1998, when Cendant disclosed its accounting irregularities. As explained, at that time Plaintiff knew or should have known that he had a claim. This Court rejects Plaintiff's assertion that the statute did not begin to run until April 20, 2000 when Plaintiff was informed that he was not a member of the class. Plaintiff should have known that he had USL claims upon Cendant's disclosure of accounting irregularities, not Cendant's notice regarding his class status. As such, Plaintiff's USL claims fail as a matter of law unless they are saved by some doctrine of tolling or estoppel.

■ Plaintiff's argument that Defendant is equitably estopped from raising a statute of limitations defense to the state securities claim is unsubstantiated by the evidence before this Court. This Court has previously held that Plaintiff must allege in his complaint the facts supporting the application of equitable estoppel. *See Gould v. Great–West Life & Annuity Ins. Co.*, 959 F.Supp. 214, 222 (D.N.J.1997)(finding that some of Plaintiff's equitable estoppel claims were not properly before the court because they were not asserted in the comp). Here, the majority of the facts upon which Plaintiff bases his equitable estoppel argument appear only in his briefs and affidavit. These facts may not be considered on a motion to dismiss. *See id.; see also P.Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 142 F.Supp.2d 589, 613–14 (D.N.J. 2001)(a plaintiff may not amend his complaint by briefs or affidavit submitted on a motion to dismiss)(*citing Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir.1988)). The only conduct

by Defendant actually alleged in Plaintiff's Amended Complaint that supports a claim for equitable estoppel is the issuance of the April 20 Memo. (Second Amend. Compl. ¶¶ 41–64). This alleged conduct, however, cannot warrant application of estoppel here because it occurred five days after the statute of limitations had expired on April 15, 2000. Accordingly, Defendant is not equitably estopped from raising a statute of limitations defense.

Similarly, equitable tolling cannot save Plaintiff's USL claims. The New Jersey Supreme Court has not yet determined whether a toll similar to that afforded in federal actions under *American Pipe & Constr. Co. v. Utah* is applicable in putative class actions under New Jersey law. 414 U.S. 538, 552–53, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). However, one Appellate Division panel has recently applied *American Pipe* in the products liability context. *Staub v. Eastman Kodak Co.,* 320 N.J.Super. 34, 726 A.2d 955 (App.Div. 1999). In American Pipe, the Court held that commencement of a putative class action in federal court tolls the statute of limitations for purported class members until class certification is denied. When class certification is denied, or a purported class member for any reason ceases to be a member of the putative class, the toll ends by operation of law and the limitations period begins to run immediately. *See Armstrong v. Martin Marietta Corp.,* 138 F.3d 1374, 1382–83 (11th Cir.1998).

■ Assuming American Pipe tolling applies to state securities claims, such would still not save Plaintiff's claims because such tolling is available only to those persons "who would be a member of the asserted class if the class was certified." *Staub v. Eastman Kodak Co.,* 320 N.J.Super. 34, 726 A.2d 955, 967 (1999). Like American Pipe tolling, *Staub* tolling does not apply where a party may have thought he was a purported class member but was,

in reality, excluded from the class definition. *Id.* Because Plaintiff here was never a purported class member of the CalPERS class, American Pipe tolling would not save his claim.

■ Further, even if Plaintiff were a purported member of a putative class, under American Pipe the limitations period applicable to his state securities claims could have been tolled only until such time as he was no longer a class member, that is, on December 14, 1998 when the CalPERS Amended Complaint in the consolidated class actions was filed. Also, *Staub* tolling is available to former class members only to the extent their claims were raised in the original putative class action. Here, the CalPERS action asserted no claims under the USL, and accordingly did not act to toll Plaintiff's USL claims. It follows then that even if this Court accepted Plaintiff's argument to apply American Pipe tolling, his USL claims remain untimely.

## VI. Motion for Sanctions

### Standard for Sanctions

■ Fed.R.Civ.P. 11(b)(2) states that, by filing a complaint with the court, an attorney is certifying that, to the best of his/her knowledge formed after a reasonable inquiry, the claims therein are warranted by existing law. *See Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers,* 855 F.2d 1080, 1090 (3d Cir.1988). If Rule 11 is violated, the court may impose appropriate sanctions on the attorney or parties responsible for such violation. *See Carlino v. Gloucester City High Sch.,* 57 F.Supp.2d 1, 37 (D.N.J.1999).

■ The Third Circuit instructs that "[t]he legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the cir-

cumstances." *Ford Motor Co. v. Summit Motor Prods., Inc.,* 930 F.2d 277, 289 (3d Cir.1991)(*citing Business Guides v. Chromatic Comm. Enter., Inc.,* 498 U.S. 533, 546–47, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991)). Reasonableness, in the context of Rule 11, is "an objective knowledge or belief at the time of the filing of the challenged paper that the claim was well-grounded in law and fact." *Id.*

■ To be in compliance with Rule 11, an attorney is required to conduct "a reasonable inquiry into both the facts and the law supporting a particular pleading." *Schering Corp. v. Vitarine Pharm. Inc.,* 889 F.2d 490, 496 (3d Cir.1989). Rule 11 was intended to discourage claims that are frivolous, legally unreasonable, or without factual foundation. *See Carlino,* 57 F.Supp.2d at 37.

### Defendant's Argument

Defendant argues sanctions are appropriate because none of the claims set forth in the Complaint is "warranted by existing law." Fed.R.Civ.P. 11(b)(2). Defendant charges that the complaint is a purely frivolous pleading in which Plaintiff attempts to assert time barred claims, as well as a promissory estoppel claim based on nothing more than an indefinite and conditional "promise." According to Defendant, Plaintiff undoubtedly filed the complaint in an attempt to harass Defendant, who terminated his employment for cause in June 2000, and to exploit Defendant's accounting irregularities.

Defendant further argues that sanctions are appropriate when, as here, a party submits a pleading that contains claims barred by the statute of limitations. *See Napier,* 855 F.2d at 1091 (filing "of a claim clearly precluded by the statutes of limitations ... was legally frivolous"); *Slater v. Skyhawk Transp., Inc.,* 187 F.R.D. 185, 199–200 (D.N.J.1999)(filing of motion to amend complaint to add claim that was

barred by statute of limitations violated Rule 11); *see also Estate of Blue v. County of Los Angeles,* 120 F.3d 982, 985 (9th Cir.1997)(filing of complaint violated Rule 11 because claims were barred by statute of limitations); *Johnson v. A.W. Chesterton Co.,* 18 F.3d 1362, 1365 (7th Cir.1994)(attorney liable for sanctions under Rule 11 for filing claims barred by statute of limitations).

### Plaintiff's Argument

Plaintiff opposes Defendant's request for sanctions but does not set forth any argument other than to state that there is no basis for Cendant's motion under Rule 11.

### Analysis

■ Although this Court finds that Plaintiff's claims should be dismissed and he should not be granted leave to file a Second Amended Complaint, this Court does not find that the imposition of sanctions is warranted. This Court recognizes that sanctions are appropriate when complaints are filed in clear violation of the statute of limitations. Here, however, as explained, Plaintiff had some reason for believing that his claims were not time barred. Similarly, sanctions are not appropriate for the filing of the promissory estoppel or breach of contract claims because Plaintiff had some basis for asserting such claims.

### CONCLUSION

This Court, after reviewing the parties submissions and hearing oral arguments: (1) grants Defendant's Motion to Dismiss Plaintiff's federal securities law claims and promissory estoppel claim asserted in the initial Complaint, (2) denies Plaintiff's Motion for Leave to File A Second Amended Complaint to add a breach of contract claim, (3) grants Defendant's Motion to Strike Plaintiff's state securities claims alleged in the First Amended Complaint,

and (4) denies Defendant's Motion for Sanctions.

## ORDER

Plaintiff Rick Del Sontro ("Plaintiff") alleges that Defendant Cendant Corporation, Inc. ("Cendant" or "Defendant") violated Sections 11 and 12(a)(2) of the Securities Act of 1933, 15 U.S.C. §§ 77k and 77l(a)(2), (the "Securities Act") and Sections 10(b) and 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78n(a), (the "Exchange Act"). Plaintiff filed an Amended Complaint to add claims under New Jersey Uniform Securities Law, N.J.S.A. (the "USL") and a Second Amended Complaint to add a breach of contract claim.

For the reasons stated in the accompanying opinion,

It is on this __ day of August 2002:

ORDERED that Defendant's Motion to Dismiss Plaintiff's Complaint is GRANTED;

FURTHER ORDERED that Plaintiff's Motion for Leave to File the Second Amended Complaint is DENIED;

FURTHER ORDERED that Defendant's Motion To Strike Plaintiff's Amended Complaint is GRANTED; and

FURTHER ORDERED that Defendant's Motion for Sanctions is DENIED.